## TILLIE NODLAND AND OTHERS v. CASIMER CHIRPICH AND OTHERS.

240 N. W. 2d 513.

March 12, 1976—Nos. 45235, 45319.

*Warren D. Chamberlain,* for appellants.

*Joseph R. Gadola,* for respondent Chirpich.

*Tuveson & Goldman* and *Robert C. Tuveson,* for respondent Hull.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action against defendant Chirpich to recover possession of a 320-acre farm, and against defendant Hull, a real estate agent, for damages for fraud. Hull counterclaimed for his commission. The district court granted Hull summary judgment on the fraud claim, ordered judgment against plaintiffs on their claims, and dismissed the counterclaim asserted by Chirpich and Hull. We affirm. This case presents for decision two issues, first, whether there is an enforceable contract of sale when eight of nine co-owners of a parcel of land accept an offer to buy, represent to the buyer that they have authority to act for the ninth co-owner, persuade the ninth co-owner to reject the offer, and the ninth co-owner thereafter contacts the offeror, requests him to resubmit the offer, and accepts it; second, whether delivery of a photostatic copy of a contract of sale, evidencing the signatures of eight of the nine co-owners, satisfies the delivery requirement when the original is lost in the mails or destroyed by the ninth co-owner at the urging of the eight who signed it.

In 1971, Albert Malakowsky died owning the 320-acre farm here in dispute and leaving as heirs Tillie Nodland, Louise Melcher, Helen Schroeder, Elfrieda Gilbertson, Emelie Mucha, and Johanna Paschal, plaintiffs, and Carl Malakowsky, Lillian Grundwald, and Sophia Kilmer, the defendants.

All nine heirs orally appointed Emelie Mucha and Carl Malakowsky to be their agents in managing the farm, located in Faribault County, and directed them to find a buyer at $700 per acre. Pursuant to that authority, Emelie and Carl, on December 2, 1972, signed an exclusive listing agreement with defend-

ant Paul Hull, a duly licensed real estate broker. Hull's commission was set at 5 percent of the purchase price, and he was directed to find a buyer at $700 per acre on a 10-year contract for deed. Hull could not find a buyer at that price, but did find one who would pay $600 per acre, cash—defendant Casimer Chirpich. Hull spoke with Emelie and Carl about reducing the price, and prepared an instrument for the co-owners to sign agreeing to sell the farm to Chirpich for $600 per acre. He then went to eight of the co-owners and obtained their signatures. The ninth, Johanna Paschal, was living in New Mexico and did not sign. At about this time Johanna gave Emelie written authority to act for her with respect to the farm sale; later, she directed Emelie to destory the writing. Hull then prepared an earnest money contract which he signed as agent and Chirpich signed as buyer. Hull also prepared a contract for deed on March 9. This contract for deed was signed by Chirpich and by all co-owners except Johanna. The original and two copies were mailed by Hull to Johanna at Carlsbad, New Mexico, for her signature.

Before Johanna could act on the matter, some of the other co-owners called her and asked her not to sign the contract. As a result, Johanna refused to sign and returned the contract to Hull by registered mail. However, the contract and copies were lost in the mail and have never been found.[1] Emelie and others thereupon notified Chirpich that the deal was off and presented him with an offer to rent the farm which he rejected. On March 29, Elfrieda, Sophia, Helen, Louise, and Emelie served written notice upon Hull that they were terminating his agency. At about the same time Johanna, by telephone, directed Hull to draw up a replacement contract for deed, identical to the first, and send it to her for her signature, with the understanding that he would attempt to get the signatures of the other co-owners on the re-

[1] At oral argument counsel indicated that Emelie Mucha testified in another proceeding that Johanna had in fact destroyed the deed and had not mailed it back to Hull as she had claimed. Whether it was lost in the mail or destroyed, the result is not affected.

placement. Johanna signed the replacement on May 9 and returned it to Hull. Carl and Lilian also signed it, but the other co-owners refused.

Chirpich took possession of the premises on April 1, 1973, and has retained possession to date. He has paid Hull all of the amounts required by the contract and has at all times been ready, willing, and able to make final payment. This suit was instituted in July 1973. Judgment was entered on May 30, 1974. On January 27, 1975, defendants Malakowsky, Grundwald, and the administrator of Sophia Kilmer's estate [2] each conveyed to Chirpich their one-ninth undivided interests in the farm, received one-ninth of the sale proceeds, and paid Hull one-ninth of his commission.

■ Plaintiffs' claim that there was no enforceable contract of sale rests upon the fact that one of the co-owners, Johanna Paschal, originally rejected Chirpich's offer to buy. Once rejected, an offer is terminated and cannot subsequently be accepted. Restatement, Contracts, § 35(2). If the parties had contracted to buy and sell the entire farm, and not merely the vendors' undivided interests, an issue which the trial court did not resolve, then the assent of all of the co-owners would be necessary to the formation of a contract of sale. Haugland v. Canton, 250 Minn. 245, 251, 84 N. W. 2d 274, 278 (1957).

A different rule applies, however, when an owner represents to the buyer that he has authority to act for a second co-owner, the buyer reasonably relies upon the representation, and the co-owner later refuses to sell. In such a case, the buyer has the right **to obtain the undivided interest of** the first owner, even if he had originally contracted to purchase the property as a whole. Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 946 (1908); McCray v. Buttell, 149 Minn. 487, 184 N. W. 191 (1921).[3] In the case at bar, Johanna had given Emelie written authority to act

[2] Mrs. Kilmer died prior to trial.

[3] See, also, Naylor v. Stene, 96 Minn. 57, 104 N. W. 685 (1905); Annotation, 154 A. L. R. 767.

for her with respect to the sale. The trial judge found (1) that Emelie and others had represented to Chirpich that Johanna would act in accordance with their wishes, and (2) that Chirpich acted in reliance upon that representation.[4] Thus, Chirpich had the right to obtain the undivided interests of the eight co-owners, and, when Johanna signed the replacement contract on May 9, he had the right to all nine undivided interests.

■ In any case, even if the assent of Johanna was a necessary condition to the liability of the other co-owners on the contract to sell, plaintiffs are not in a position to avail themselves of her initial refusal. The trial judge found that other co-owners, after they had signed the contract, persuaded Johanna not to sign, and that she would have signed but for their actions.[5] Restatement, Contracts, § 295, provides:

---

[4] The trial judge found as follows: "* * * [I]t is clear from the evidence that Hull and Chirpich were told by Mucha, and other owners, that Paschal had agreed to do what they did in connection with the sale and that there would be no problem with her execution of the contract documents. It is also clear that all of the owners intended and expected that Paschal would sell her interest and execute the contract documents as all the other owners had done. It is also clear that Hull and Chirpich believed the representations so made to them and acted upon the same."

[5] The trial judge stated in his memorandum, expressly made a part of his order: "From all the evidence it is clear to the Court and the Court finds that it was the intention of Paschal to execute these documents and that she would have done so when the first contract was sent to her except for the pressures put upon her by some of the other owners to withhold her signature with the intention of using that fact as grounds to repudiate the contract. It is also clear that Paschal suffered great uncertainties of mind concerning what her proper course of action should be. She went so far as to tell one of the owners that she felt that she should sign the contract but she didn't quite know what to do and she asked this other owner to tell her directly not to sign as that would relieve her conscience."

This finding is borne out by the fact that 2 months later Johanna asked Hull to send her a replacement contract which she then signed.

"§ 295. EXCUSE OF CONDITION BY PREVENTION OR HINDRANCE.

"If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred, or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused, and the actual or threatened nonperformance of the return promise does not discharge the promisor's duty, unless

"(a)   the prevention or hindrance by the promisor is caused or justified by the conduct or pecuniary circumstances of the other party; or

"(b)   the terms of the contract are such that the risk of such prevention or hindrance as occurs is assumed by the other party." [6]

In Kooleraire Serv. & Installation Corp. v. Board of Education, 28 N. Y. 2d 101, 320 N. Y. S. 2d 46, 268 N. E. 2d 782 (1971), the contract at issue provided that it was not binding unless the comptroller certified that there remained unexpended funds sufficient to pay the estimated expense of the contract. The defendant board of education requested the comptroller to withhold his certification and, when he did so, rescinded the contract. The court held that the defendant could not take advantage of the failure of the condition precedent, the performance of which the defendant itself had frustrated.[7] This principle has been stated as follows (17 Am. Jur. 2d, Contracts, § 427):

"One who prevents or makes impossible the performance or happening of a condition precedent upon which his liability by the terms of a contract is made to depend cannot avail himself

---

[6] See, also, 5 Williston, Contracts (3 ed.) § 677.

[7] See, also, Wissahickon Realty Corp. v. Boyle, 385 Pa. 198, 122 A. 2d 720 (1956); Sargent v. Highlite Broadcasting Co. 466 S. W. 2d 866 (Tex. Civ. App. 1971); Security Nat. Life Ins. Co. v. Pre-Need Camelback Plan, Inc. 19 Ariz. App. 580, 509 P. 2d 652 (1973); Refrigeration Engineering Co. v. McKay, 4 Wash. App. 963, 486 P. 2d 304 (1971). Cf. Hamlin v. Schulte, 34 Minn. 534, 27 N. W. 301 (1886).

of its nonperformance. Even more broadly, *where a promisor prevents or hinders the occurrence, happening, or fulfilment of a condition in a contract, and the condition would have occurred except for such hindrance or prevention, the performance of the condition is excused and the liability of the promisor is fixed regardless of the failure to perform the condition."* (Italics supplied.) [8]

In the case at bar, plaintiffs, *after they had signed the contract,* persuaded Johanna not to accept the offer and then attempted to rescind. They are not entitled to assert Johanna's initial rejection of the offer as a defense to their contractual liability, when that rejection was caused by their own actions.

■ Delivery is ordinarily an essential element of the execution of a written contract. Pogreba v. O'Brien, 223 Minn. 430, 27 N. W. 2d 145 (1947). Its purpose is to provide an overt, objective manifestation of an intent to complete the transaction, analogous to the common law concept of livery of seisin. In the case at bar, the original and two copies of the contract were lost. However, Chirpich was given a photocopy of the contract showing six of the signatures of the eight co-owners. (For lack of space, two signatures were placed on a separate sheet which was not photocopied.) Johanna's signature was obtained on the replacement. Since there is no question but that all of the other eight co-owners signed the original contract, the delivery of a photocopy of the contract to Chirpich, made after the contract was signed, provides the required objective manifestation of intent to complete the transaction. The delivery requirement was fulfilled.

■ Plaintiffs also contend that the trial court erred in granting summary judgment in favor of Hull on their fraud claim. The trial judge ruled that plaintiffs failed to make out a prima

---

[8] See, also, Rich v. McMullan, 506 S. W. 2d 745 (Tex. Civ. App. 1974); Highlands Plaza, Inc. v. Viking Investment Corp. 72 Wash. 2d 865, 435 P. 2d 669 (1967); Stark v. Budwarker, Inc. 25 Mich. App. 305, 181 N. W. 2d 298 (1970).

facie case, as they introduced no evidence of pecuniary damage, an essential element of fraud. Love v. Anderson, 240 Minn. 312, 61 N. W. 2d 419 (1953). We have reviewed the record, and find no evidence to support the claim of fraud.

■ Plaintiffs claim that Hull is not entitled to his commission on the sale, as he did not plead that he was licensed pursuant to Minn. St. 1973, § 82.16, subd. 2.[9] This issue was not raised below. Noncompliance with § 82.33, subd. 1, is waived as a defense unless raised at trial. Albers v. Fitschen, 274 Minn. 375, 143 N. W. 2d 841 (1966).

Affirmed.

___
[9] Repealed by L. 1973, c. 410, § 19, and replaced by Minn. St. 82.33, subd. 1.