**Dean A. and Barbara J. ROSTAD, Appellants,**

v.

**ON–DECK, INC., a New Jersey Corporation, Respondent,**

**Gary Guy Willey, Respondent.**

No. C2–84–235.

Court of Appeals of Minnesota.

Sept. 4, 1984.

Leo F. Feeney, Robins, Zelle, Larson & Kaplan, St. Paul, for appellants.

Graham Heikes, Brian N. Johnson, Jardine, Logan & O'Brien, St. Paul, for respondents.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

LANSING, Presiding Judge.

Dean and Barbara Rostad appeal from an order dismissing their products liability action for lack of personal jurisdiction. The Rostads commenced this action in April 1980 seeking recovery of personal injury damages from On-Deck, Inc., a New Jersey corporation. On-Deck's answer alleged, among other things, the affirmative defense of lack of personal jurisdiction. The trial court found On-Deck's contacts with Minnesota insufficient to support long-arm jurisdiction because On-Deck had not personally entered this state. We reverse.

## FACTS

On-Deck, Inc., a New Jersey corporation, manufactures a vinyl-covered solid metal bat-weight used to increase the weight of an ordinary baseball bat for practice swings and warm-up exercises. The ring-shaped weight fits over the handle of a bat and is designed to be secured by the bat's thick end.

In 1978 Gary Guy Willey, a groundskeeper for the City of St. Louis Park, found a bat-weight while cutting grass on a city ballfield. On-Deck admits for purposes of this appeal that it manufactured the

weight. Willey allowed his teammates on the Golden Leaf Bar softball team to use the weight during the 1978 softball season. During a game in Minneapolis on August 6, 1978, the 1¼-pound weight flew off the bat of a warming-up, or "on-deck," batter and struck the umpire, Dean Rostad, in the head. Rostad was seriously and permanently injured.

The On-Deck bat-weight was invented by Frank Hamilton in 1967. He incorporated in New Jersey under the name "On-Deck" in 1968 and contracted with a foundry to begin manufacture of the product. Shortly after incorporation Hamilton took his bat-weight to General Sportcraft Company, Ltd., a New York corporation authorized to do business in New Jersey. General Sportcraft, a national distributor of sporting goods, was interested in handling the product but said advance promotion and publicity were necessary.

Hamilton subsequently went into partnership with Elston Howard, a prominent professional ballplayer. They traveled extensively, promoting the weight to professional baseball teams and at a sporting goods show. Later in 1968 General Sportcraft and On-Deck entered into a distribution agreement under which On-Deck was the manufacturer and General Sportcraft the promoter and exclusive distributor of On-Deck bat-weights. On-Deck agreed to sell in bulk to General Sportcraft for resale and distribution "throughout the continent of North America, the state of Hawaii, and all islands in the Caribbean Sea and the Gulf of Mexico." Packages were to be labeled "Elston Howard's On-Deck Bat-Weight." Howard agreed to continue to make promotional appearances.

From 1969 to 1980 General Sportcraft had one or more representatives in Minnesota who sold bat-weights, in addition to other sporting goods, to retail stores throughout the state. After 1973 General Sportcraft was no longer the exclusive distributor of the On-Deck bat-weight; On-Deck began bulk sales to a number of other nationwide distributors, including Sears, K-Mart, and Hillerich & Bradsby Co.

At no time, however, did On-Deck itself directly sell any bat-weights in Minnesota.

The trial court held that On-Deck did not have sufficient contacts with Minnesota to permit constitutional exercise of personal jurisdiction under Minnesota's long-arm statute, Minn.Stat. § 543.19 (1982), reasoning that On-Deck never personally entered the state through an office, a telephone call, or any sales representatives.

## ISSUE

Does an out-of-state manufacturer distributing a product through a nationwide distributor have sufficient contacts with Minnesota to support long-arm jurisdiction in a products liability suit arising in Minnesota?

## ANALYSIS

The Minnesota long-arm statute, Minn.Stat. § 543.19 (1982), provides for long-arm jurisdiction over a foreign corporation when that corporation commits an act outside of Minnesota that causes injury or property damage inside the state. *Id.* § 543.19, subd. 1(d). The statute was drafted in an effort to extend long-arm jurisdiction to the maximum extent allowed by the due process clause of the United States Constitution. *E.g. Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1982) (citing *Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1269 (8th Cir.1978)). A court may constitutionally exercise jurisdiction over a defendant if the defendant has sufficient "minimum contacts" with the forum state so that requiring the defendant to defend there does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court clarified the meaning of "minimum contacts" in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), finding that it is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and pro-

tections of its laws." *Id.* at 253, 78 S.Ct. at 1240.

The minimum contacts test performs two functions, as explained by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). It protects the defendant from burdensome litigation in a distant or inconvenient forum, and it also promotes federalism by ensuring that states "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* at 291–92, 100 S.Ct. at 564.

■ To determine the constitutional sufficiency of a defendant's contacts with the state, Minnesota has adopted the five-factor test set out in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965). *See e.g. Dent-Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904 (Minn. 1983). The following factors are considered:

(1) the quantity of contacts,

(2) the nature and quality of contacts,

(3) the source and connection of those contacts to the cause of action,

(4) the interest of the forum state, and

(5) the convenience of the parties.

*Id.* at 907. The first three factors are given primary consideration, while the last two are considered less important. *Id.*

■ The factors of forum interest and convenience do not deprive the court of jurisdiction in this case. Minnesota's interest in providing a forum is clear: Rostad is a resident, he sustained the injury in this state, and because the New Jersey statute of limitations has run, Minnesota is the Rostads' only available forum. On-Deck concedes that the convenience of the parties weighs equally. The Rostads' witnesses reside in Minnesota; On-Deck's will likely come from New Jersey. Although it will be expensive for On-Deck to defend in Minnesota, this factor is less important than consideration of On-Deck's contacts with the state. *See Dent-Air, Inc.,* 332 N.W.2d at 909.

The facts applicable to factors (1) and (3) also militate in favor of asserting jurisdiction. On-Deck had a substantial number of contacts with Minnesota. Retail sporting goods stores throughout the state sold On-Deck bat-weights, distributed by General Sportcraft, for 13 years. The Minnesota Twins bought the weights for ten years, and thousands were sold through retail outlets. The "source and connection" of On-Deck's contacts are also closely related to the Rostads' cause of action. On-Deck has stipulated, for purposes of this appeal, that it manufactured the weight that injured Rostad. Rostad's injury thus arose out of a specific forum-related act—the distribution of On-Deck bat-weights to Minnesota retailers and the consequent sale and use of the weight that caused the injury.

The "nature and quality" of On-Deck's contacts with Minnesota requires a more thorough analysis. On-Deck has never had an office, property, mail or telephone listing, or any sales agents in Minnesota and has never made any direct sales or solicited business in the state. On-Deck argues, therefore, that its contacts with Minnesota are insufficient to support jurisdiction because it has not purposefully availed itself of the benefits and protections of Minnesota law. *See Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239.

On-Deck's lack of direct contacts with Minnesota does not necessarily preclude personal jurisdiction. In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 298, 100 S.Ct. at 567 (1980), the Supreme Court discussed the "stream-of-commerce" theory of personal jurisdiction in a products liability case. *World-Wide Volkswagen* involved the propriety of an Oklahoma court's exercise of personal jurisdiction over a regional distributor and a retail dealer of foreign-manufactured automobiles. Both defendants were New York corporations who did no business outside of New York, New Jersey and Connecticut. The plaintiffs, also New York residents, were injured in Oklahoma. They argued that the defendants should be subject to suit in Oklahoma because it was foreseeable that an automobile purchased in New York

would cause injury in Oklahoma. The Court rejected this argument, determining that foreseeability that a manufacturer's product will end up in a state is not *alone* sufficient to make the manufacturer amenable to suit in that state. *See id.* at 295–96, 100 S.Ct. at 566–67.

The Court went on to note, however, that foreseeability is still a relevant factor. As explained by the Court, "the foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. The Court explained in dicta that where the sale of a manufacturer's or distributor's product

> is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98, 100 S.Ct. at 567 (citing *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961)). A number of courts have relied on this dicta to sustain jurisdiction in products liability cases where the product has traveled through a chain of distribution before reaching the ultimate consumer. *See e.g. Noel v. S.S. Kresge Co.,* 669 F.2d 1150 (6th Cir.1982); *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980); and cases cited in Note, *The Long-Arm Reach of the Courts After Kulko v. Superior Court,* 65 Va.L.Rev. 175 (1979).

The "stream-of-commerce" theory satisfies due process requirements because the manufacturer avails itself of the "protections and benefits" of the forum state's laws through the protection those laws provide for the product and through the pecuniary benefit from indirect sales to forum residents. *See e.g. DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). It can fairly be said that On-Deck purposefully availed itself of the privilege of conducting business in Minnesota as a result of On-Deck's relationship with its distributor, General Sportcraft. On-Deck knew that General Sportcraft was a nationwide distributor and that General Sportcraft actively distributed and promoted On-Deck bat-weights in Minnesota for over ten years. On-Deck received economic benefit from bat-weights sold in Minnesota and legal benefit from the protection Minnesota courts provide for businesses in the state.

In *World-Wide Volkswagen* the Court drew a distinction between a dealer or distributor seeking to serve a limited or local market and a manufacturer or national distributor. *See World-Wide Volkswagen,* 444 U.S. at 297–98, 100 S.Ct. at 567–68. Here, although On-Deck itself did not sell in Minnesota, it did not confine its market to a limited area. Rather, it marketed its product nationwide through General Sportcraft and its other distributors. On-Deck did nothing to limit sales in Minnesota and, indeed, because of its financial stake in bat-weight sales, actively encouraged and benefited from such sales. On-Deck could clearly foresee that its bat-weights would end up in Minnesota. Although this factor alone is insufficient to support jurisdiction, On-Deck's conduct and connection with Minnesota made it foreseeable that On-Deck might be involved in litigation in the state; thus, it is both reasonable and fundamentally fair for Minnesota to exercise personal jurisdiction over On-Deck. The United States District Court for the Eastern District of Pennsylvania recognized the problem of allowing manufacturers and distributors to profit from nationwide distribution while remaining insulated from liability in *Rockwell International Corp. v. Costruzioni Aeronautiche Giovanni*

*Agusta,* 553 F.Supp. 328, 334 (E.D.Pa. 1982). The *Rockwell* court, finding long-arm jurisdiction over a French corporation that manufactured parts for helicopters sold through a United States distributor, quoted the Third Circuit:

> Underlying the assumption of jurisdiction in these cases is the belief that the fairness requirements of due process do not extend so far as to permit a manufacturer to insulate itself from the reach of the forum state's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products.

*Rockwell,* 553 F.Supp. at 334 (quoting *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981)).

This jurisdictional determination makes it unnecessary to decide the additional issue raised by the Rostads of whether On-Deck waived its jurisdictional defense by its failure to completely answer an interrogatory requesting the bases of the defense.

## DECISION

Accordingly, we find that the Minnesota courts may properly exercise in personam jurisdiction over On-Deck. We therefore reverse the trial court's decision.

Reversed.