**DATASERV EQUIPMENT, INC., Respondent,**

v.

**TECHNOLOGY FINANCE LEASING CORP., Appellant.**

No. CO–84–1514.

Court of Appeals of Minnesota.

March 26, 1985.

Robert J. Hennessey, Minneapolis, for respondent.

Stephen J. Davidson, Minneapolis, Gordon Locke, Technology Finance Group, Inc., Westport, Conn., for appellant.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from a judgment entered after trial to the district court determining that appellant was subject to the jurisdiction of Minnesota courts and that appellant breached a contract to purchase certain computer equipment. We affirm that part of the judgment finding that the court had jurisdiction, and reverse on the question of contract formation.

## FACTS

Appellant Technology Finance Group, Inc. (Technology), a Nevada corporation with its principal place of business in Connecticut, and Respondent Dataserv Equipment, Inc. (Dataserv), a Minnesota corporation with its principal place of business in Minneapolis, are dealers in new and used computer equipment.

On or about August 29, 1979, Dataserv's Jack Skjonsby telephoned Technology's Ron Finerty in Connecticut and proposed to sell to Technology, for the price of $100,-000, certain IBM computer "features" which Dataserv had previously purchased in Canada.

As a result of long distance telephone conversations between Skjonsby and Finerty, on August 30, 1979, Finerty sent Skjonsby a written offer to purchase the features and on September 6, 1979, Dataserv sent to Technology a proposed form of contract. Dataserv's proposed contract form included a nonstandard provision, appearing in the contract form as clause 8 and referred to by the parties as the "In-

depth Clause." The clause provided that installation of the features would be done by Indepth, a third party. The contract also provided that "[t]his agreement is subject to acceptance by the seller ... and shall only become effective on the date thereof," and "[t]his agreement is made subject to the terms and conditions included herein and Purchaser's acceptance is effective only to the extent that such terms and conditions are conditions herein. Any acceptance which contains conditions which are in addition to or inconsistent with the terms and conditions herein will be a counter offer and will not be binding unless agreed to in writing by the Seller."

On October 1, Finerty wrote Skjonsby that three changes "need to be made" in the contract, one of which was the deletion of clause 8. The letter closed with: "Let me know and I will make the changes and sign." Two of the changes were thereafter resolved, but the resolution of clause 8 remained in controversy.

Later in October 1979, Dataserv offered to accept, in substitution for Indepth, any other third-party installation company Technology would designate. Technology never agreed to this.

On November 8, 1979, Dataserv by telephone offered to remove the Indepth clause from the contract form. Technology responded that it was "too late," and that there was no deal.

On November 9, 1979, Finerty called Dataserv, and informed them that "the deal was not going to get done because they'd waited until too late a point in time." During this period of time, the market value of the features was dropping rapidly and Dataserv was anxious to complete the deal. It is undisputed that the market for used computer equipment, including its features, is downwardly price volatile.

By telex dated November 12, 1979, Dataserv informed Technology that the features were ready for pickup and that the pickup and payment be no later than November 15, 1979.

On November 13, 1979, Finerty responded by telex stating:

[S]ince [Dataserv] had not responded in a positive fashion to Alanthus' [Alanthus is the former name of Technology Finance Group] letter requesting ` contract changes * * * its offer to purchase [the features] was withdrawn on 11/9/79 via telephone conversation with Jack Skjonsby. Ten to fifteen days prior, I made Jack aware that this deal was dead if Dataserv did not agree to contract changes prior to the "Eleventh Hour".

On June 19, 1980, the features were sold by Dataserv to another party for $26,000. It then sought a judgment against Technology for the difference between the sale price of the features and the contract price.

By its Answer and by way of pretrial motion, Technology claimed that the court lacked jurisdiction over the person of the defendant. The trial court denied the motion on February 20, 1981.

At trial the parties stipulated that as of November 8, 1979 Dataserv telephonically offered to take out the Indepth Clause. The trial court found that this telephone call operated as an acceptance of Technology's counteroffer of October 1, 1979, thereby establishing a contract between the parties embodying the terms of Dataserv's printed standard contract dated September 6, 1979, minus clause 8 thereof. The trial court found that as of November 15, 1979, Technology breached its contract to Dataserv's damage, and awarded Dataserv $74,000 in damages, plus interest from the date of the breach.

## ISSUES

1. Did the trial court err in finding jurisdiction over the person of Technology within the meaning of Minn.Stat. § 543.19 (1984)?

2. Did the trial court err in finding that the parties entered into a contract?

3. Did the trial court err in finding that Dataserv mitigated its damages?

## ANALYSIS

■ 1. The trial court found that because Technology held a business lease with a Minnesota corporation as lessee, it "transacts ... business within the state" under Minn.Stat. § 543.19, subd. 1(b) (1984) as a matter of law. It found that clause (b) constitutionally permitted jurisdiction based on the five-factor analysis of the minimum contacts between the defendant and Minnesota, set forth in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965). Minnesota has adopted the *Aftanase* test. *Dent-Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn.1983); *Rostad v. On-Deck, Inc.*, 354 N.W.2d 95, 98 (Minn.Ct.App.1984).

■ Technology argues that its forum activities were "totally unrelated" to Dataserv's cause of action, thereby precluding jurisdiction under the *Aftanase* formula. We do not agree. It is apparent that Technology has a number of contacts within the State of Minnesota, including, at the time of negotiations, the maintenance of a sales office and the leasing of equipment within the state. In addition, Technology had the telephone and mail contacts with the State of Minnesota which gave rise to this litigation. Given these substantial contacts between not only Technology and the forum, but between the forum and the litigation, it is apparent that Technology has the requisite minimum contacts with Minnesota to permit Minnesota to exercise personal jurisdiction over it. *See BLC Insurance Company v. Westin, Inc.*, 359 N.W.2d 752 (Minn.Ct.App.1985). The purposeful behavior of Technology is such that it should have reasonably anticipated being haled into court here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

2. Technology claims that the trial court erred in finding that the parties entered into a contract. It contends that Dataserv's response to its counteroffer operated, as a matter of law, as a rejection, terminating Dataserv's power to subsequently accept the counteroffer.

■ Under familiar principles of contract law, a party's rejection terminates its power of acceptance. Restatement (Second) of Contracts § 380 (1981). Once rejected, an offer is terminated and cannot subsequently be accepted without ratification by the other party. *Nodland v. Chirpich*, 240 N.W.2d 513, 307 Minn. 360 (1976).

■ The critical issue is whether Dataserv rejected Technology's October 1 counteroffer. Dataserv responded to Technology's October 1 counteroffer by agreeing to delete two of the three objectionable clauses, but insisting that the third be included. By refusing to accept according to the terms of the proposal, Dataserv rejected Technology's counteroffer and thus no contract was formed. Moreover, Dataserv's offer to substitute other third party installation companies, which Technology rejected, operated as a termination of its power to accept Technology's counteroffer. Dataserv's so-called "acceptance," when it offered to delete clause 8 on November 8, 1979, was without any legal effect whatsoever, except to create a new offer which Technology immediately rejected.

■ Dataserv's November 8 "acceptance" was also ineffective because it was not signed in accordance with the offer's conditions. While it is true that Minn.Stat. § 336.2–204 does not require a signed agreement prior to formation of a contract, where the parties know that the execution of a written contract was a condition precedent to their being bound, there can be no binding contract until the written agreement was executed. *Staley Manufacturing Co. v. Northern Cooperatives, Inc.*, 168 F.2d 892 (8th Cir.1948).

3. Having found that no contract was formed between the parties, it is unnecessary to address the question of mitigation of damages.

## DECISION

Technology was subject to the jurisdiction of Minnesota courts. No contract was formed between the parties.

Affirmed in part, reversed in part.