**SILVER BALL TOO, LTD., Appellant,**

v.

**B & E ENTERPRISES, etc., et al., Respondents.**

**No. C5–86–105.**

Court of Appeals of Minnesota.

July 1, 1986.

Review Denied Aug. 27, 1986.

Richard A. Williams, Jr., Minneapolis, for appellant.

Seth M. Colton, St. Paul, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

Silver Ball Too, Inc. (appellant) sued B & E Enterprises (respondent) for breach of a contract for the sale of a business and to recover on a promissory note executed by respondent. The trial court found that the parties' transaction never closed, but that appellant was entitled to retain, as liquidated damages, part of the earnest money deposited by respondent. Appellant's motion for amended findings or new trial was denied.

Appellant challenges the trial court's findings and conclusions. Respondent filed a notice of review, arguing that it is entitled to a refund of the entire sum it paid to appellant. We affirm.

## FACTS

Appellant was a corporation engaged in the business of operating video game arcades. Its principal officer and shareholder was Joshua Aaron. Respondent is a general partnership consisting of Donald K. Elvig and Roy W. Bryant.

Respondent was interested in opening a restaurant, liquor, and video game establishment called Campus Casino near the University of Minnesota campus. In March 1983, Elvig signed a lease for 7,500 square feet of a building located at 1501 University Avenue S.E. The lease was not to begin until September 1983 when other tenants' leases would expire.

Respondent needed a license to operate video games. Elvig contacted the alderperson for the area, who informed him that she would oppose another license for the area, but would not resist transfer of an existing license. Based on these conversa-

tions, Elvig decided to seek transfer of a license.

Appellant operated a video arcade in the building at 1501 University Avenue S.E. Elvig approached appellant about selling the business. The parties signed an "asset purchase agreement" on August 29, 1983.

The purchase price was $60,000 payable as follows: $10,000 earnest money on execution of the agreement, $16,000 cash on the closing date, and a $34,000 promissory note. Closing was set for August 31, 1983, and, in any event, within two business days after transfer of the license if the transfer took place after August 31. Transfer of the license was a condition precedent to respondent's performance under the agreement.

On the date the agreement was signed, August 29, respondent gave appellant $26,-000 cash and executed the promissory note. On September 3, 1983, appellant and respondent met to exchange keys to the premises and make an accounting. After that time, respondent took over the operation of the business under appellant's license.

Both parties sought city council approval for the transfer of appellant's license to respondent. Several delays resulted, and it became clear in November that approval would not take place until January at the earliest. In the meantime, respondent began to have problems with its landlord regarding its lease.

When it appeared that the entire plan was falling apart, respondent contacted appellant to see if the parties could arrive at a mutually agreeable solution. On December 3, 1983, the parties signed a "dissolution of asset purchase agreement". The dissolution agreement provided that respondent would turn over the business to appellant and appellant would attempt to sell the business to another party. The dissolution agreement was expressly conditioned on appellant's ability to renegotiate a lease with the landlord so the business could be operated on the premises. Without a new lease, the business would be worthless because the license was tied to the 1501 University Avenue S.E. address, and respondent had begun to unwind its lease. After executing the dissolution agreement, respondent withdrew its request for transfer of the license on December 6, 1983.

Appellant was unable to negotiate an acceptable lease. On February 15, 1984, after negotiations with the landlord had broken down, appellant disposed of the remaining business assets. Appellant then filed this suit.

The court concluded that the transaction never closed because a condition precedent, transfer of the license, never occurred. Despite this failure, the court awarded appellant $10,000 liquidated damages under the contract because respondent failed to close. The court further concluded that appellant was unjustly enriched by the additional $16,000 and ordered this amount returned to respondent.

## ISSUES

1. Did the trial court err in failing to find as a matter of law that respondent waived conditions precedent to its obligations under the contract?

2. Did the trial court err in concluding that the transaction was never closed?

3. Did the trial court err in requiring appellant to refund $16,000 to respondent?

## ANALYSIS

■ 1. Appellant argues that even though transfer of the license was a condition precedent to respondent's performance under the contract, respondent waived the condition as matter of law by delivering the cash and promissory note on August 29. We do not agree.

In contract law, a waiver is defined as an intentional relinquishment of a known right, and it must "clearly be made to appear from the facts disclosed."

*Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.*, 320 N.W.2d 886, 892 (Minn.1982) (emphasis omitted) (quoting

*Kennedy v. Haase,* 262 Minn. 155, 159, 114 N.W.2d 82, 85 (1962)).

Appellant's reliance on *Confer Brothers, Inc. v. Winters,* 223 Minn. 480, 27 N.W.2d 247 (1947) is misplaced. *Confer Bros.* involved a real estate listing agreement. The alleged oral condition was that the listing agreement would not be effective until a listing agreement with another realtor expired. Despite the purported condition, the property owner delivered a key to the premises, authorized newspaper advertisements, and contacted the realtor to find out the results of the advertisements. Thus, it was clear that the owner waived the condition and treated the contract as though it was immediately effective.

Nor is *Nodland v. Chirpich,* 307 Minn. 360, 240 N.W.2d 513 (1976) helpful to appellant. *Nodland* merely stands for the proposition that a party may not procure non-performance of a condition precedent and then rely on non-performance of the condition to escape liability under the contract.

Appellant argues that respondent's withdrawal of its application for transfer of the license prevented performance of the condition. However, respondent did not withdraw the transfer application until the parties had entered into the dissolution agreement. Respondent's action was perfectly logical given the dissolution agreement; if appellant was able to sell the business to someone else, the license would have to be transferred to that party.

There is no clear evidence of waiver here. Appellant and respondent both worked diligently for transfer of the license. Respondent was in frequent contact with members of the city council. Although respondent performed all that was required of it before transfer, the evidence does not clearly demonstrate that by doing so respondent waived the condition that the license be transferred. In fact, waiver by respondent would be incongruous because the license was central to the parties' bargain.

■ 2. Appellant argues that the trial court's conclusion that the transaction never closed is not supported by the findings and the record. As such, appellant argues

that the trial court's finding that the agreement provided for closing within two business days after transfer of the license is clearly erroneous.

In an action tried to the court, the court's findings will not be reversed unless they are clearly erroneous, whether the appeal is from a judgment or from an order denying a new trial. *Duffy v. Park Terrace Supper Club, Inc.,* 295 Minn. 493, 497, 206 N.W.2d 24, 27 (1973).

The purchase agreement provides:

The closing * * * shall take place * * * on August 31, 1983, and, in any case, within two (2) days of the transfer of the operator's license from Seller to Buyer in the event that the transfer takes place after August 31, 1983.

It is undisputed that the closing did not take place on August 31, 1983. Instead, respondent performed its obligations on August 29, and appellant performed its obligations on September 3, 1983. Appellant argues that these actions constituted a closing and therefore the trial court's finding that there was no closing is clearly erroneous.

The trial court found that there was no closing because the license was never transferred. Closing is the point at which the transaction is complete or finalized. *See Black's Law Dictionary* 231 (5th ed. 1979). Because the condition precedent that the license be transferred was neither satisfied nor waived, the sale was never closed. This is true even though each party had performed its obligations under the contract. The remaining performance, although it required the cooperation of both parties, also required action by an independent party. Absent waiver of the condition, the deal could not become final under the terms of the agreement until the license was transferred.

■ 3. Both appellant and respondent quarrel with the court's order refunding $16,000 to respondent. Appellant argues that it is entitled to keep the entire amount, and respondent argues that it is entitled to refund of the entire $26,000.

Appellant takes issue with the trial court's characterization of the entire $26,000 as earnest money. Earnest money is the amount paid down on sale to demonstrate that the purchaser is serious about the transaction. On completion of the transaction, the earnest money is applied to the purchase price.

The purchase agreement here provides for only $10,000 earnest money. The additional $16,000 cash was to be part of the purchase price. Whether the payments are characterized as earnest money or partial payment, however, respondent is entitled to refund of $16,000. The purchase agreement provides that if respondent fails to close the transaction appellant is entitled to retain $10,000 of the earnest money as liquidated damages. The parties recognized that damages for non-performance would be difficult to measure, so they expressly provided for liquidated damages. This court will not rewrite the parties' agreement. There is no legal basis on which to award the additional $16,000 to appellant. For the same reason, there is no legal basis on which to return the entire sum to respondent.

### DECISION

The trial court's decision is affirmed.