BYE, Circuit Judge,
concurring in part and dissenting in part.
I readily agree with the majority the district court properly denied David Lon-gaker leave to amend his complaint. But I cannot join the majority’s conclusion the remaining two years of salary and commissions in Longaker’s employment contract belong to the bankruptcy estate, not Lon-gaker. The majority, like the district court, has confused the issue of Longaker’s standing to bring his breach of contract claim with the validity of the claim itself. I believe Longaker has standing to bring his claim. Furthermore, because I believe the salary and commissions are earnings from post-petition services and the majority’s opinion fails to properly balance the dual purposes of 11 U.S.C. § 541, I must respectfully dissent.
The district court dismissed David Lon-gaker’s complaint for lack of standing. Fed.R.Civ.P. 12(b)(1); see Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir.2002) (“[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction.”). “[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.” Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). A plaintiff must present a “case or controversy” within the meaning of Article III of the United States Constitution to have standing. Id. This “irreducible constitutional minimum” requires a plaintiff to show an “injury in fact” that is “fairly ... trace[able] to the challenged action of the defendant” and likely to be “redressed by a favorable decision.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotations and citations omitted).
Whether a plaintiff has suffered an injury “often turns on the nature and source of the claim asserted.” Warth v. Seldin, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see Int’l Primate Prot. League v. Adm’rs of Tulane Educ. Fund, 500 U.S. 72, 77, 111 S.Ct. 1700, 114 L.Ed.2d 134 *664 (1991). Accordingly, the standing inquiry, to some degree, “tracks [the plaintiffs] cause of action.” Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir.2009); see William A. Fletcher, The Structure of Standing, 98 Yale L.J. 221, 234 (1988) (characterizing the standing inquiry as “a jurisdictional question[ ] involving a preliminary look at the merits — a sort of nibble at the apple before plaintiff takes a real bite”). The Supreme Court has warned that courts should not conflate standing with the merits of a plaintiffs claim. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 89-90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see also Braden, 588 F.3d at 591 (“It is crucial, however, not to conflate Article Ill’s requirement of injury in fact with a plaintiffs potential causes of action, for the concepts are not coextensive.”); 2 Milton I. Shadur & Mary P. Squires, Moore’s Federal Practice § 12.30[1] (3d ed. 2012). “[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction.” Steel Co., 523 U.S. at 89, 118 S.Ct. 1003. Instead, whether the cause of action is valid is a merits issue. Jurisdiction is defeated only if “the claim is ‘so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.’ ” Id. (quoting Oneida Indian Nation v. Cnty. of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).
The majority, like the district court, erroneously conflates standing with the validity of Longaker’s cause of action. Lon-gaker’s standing turns on the injury he alleges. See Braden, 588 F.3d at 592. The validity of his claim — in other words, whether he will ultimately succeed in obtaining relief — turns on the cause of action he brings. See id. Longaker has stated a personal injury because Boston Scientific allegedly breached his employment contract and denied Longaker salary and commissions that are rightly his. That injury is traceable to Boston Scientific’s conduct because Boston Scientific breached the contract. And the court can redress Longaker’s injury by issuing a favorable judgment. See Lujan, 504 U.S. at 560, 112 S.Ct. 2130. Longaker has thus presented a “case or controversy.” The majority opinion concluding otherwise is incorrect.
Having established Longaker has standing, I now endeavor to demonstrate Lon-gaker presents a valid cause of action and is entitled to relief. As usual, the task of determining the meaning of a statute begins with the text of the statute itself. United States v. Ron Pair Enters., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a). The estate includes “all legal or equitable interests of the debtor in property as of the commencement of the case.” Id. § 541(a)(1). The scope of the estate is broad. See Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). It includes “even future, non-possessory, contingent, speculative, and derivative interests.” In re Carlton, 309 B.R. 67, 71 (Bankr.S.D.Fla.2004). Broad as it may be, the estate does not include “earnings from services performed by an individual debtor after the commencement of the case.” 11 U.S.C. § 541(a)(6).
Section 541(a)(1) and § 541(a)(6) illustrate the dual purposes of § 541. First, it gives creditors full availment of the debt- or’s non-exempt assets to pay off the creditors’ claims against the debtor to the maximum extent possible. Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). It accomplishes this purpose by defining the estate broadly and designating that proceeds from or profits of *665 estate property are likewise part of the estate. 11 U.S.C. § 541(a)(6). Second, it allows the debtor to make a “fresh start” by accumulating new wealth free and clear of the reach of his or her creditors. Id. It accomplishes this purpose by using the petition date to clearly demarcate the line between the assets of the estate and the assets of the debtor, or, in other words, the right of creditors to be repaid and the right of the debtor to begin anew. See Andrews v. Riggs Nat’l Bank (In re Andrews), 80 F.3d 906, 909-10 (4th Cir.1996). Pre-petition assets are rooted in the debt- or’s pre-petition activities and belong to the estate. Segal, 382 U.S. at 380, 86 S.Ct. 511. Post-petition assets flow from the debtor’s post-petition activities; they belong to the debtor. Id. Applying these principles to the present case, if Longaker’s future salary and commissions are rooted in his pre-petition activities, those assets belong to the estate. If the future salary and commissions are rooted in his post-petition activities, those assets are Longaker’s to keep.
The characterization of activities as “pre-petition” or “post-petition” is often complicated. Many pre-petition interests are contingent on the debtor’s performance of post-petition services. In such a case, the extent of the estate’s interest in an asset cannot be greater than the interest the debtor holds in the asset at the petition date. Drews v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir.2002) (opinion of Wollman, J.) (“[Djespite the broad scope of § 541, it ‘is not intended to expend [sic] the debtor’s rights against others more than they exist at the commencement of the case.’ ” (quoting S. Rep. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868)). Therefore, the estate’s share of an asset contingent on post-petition services cannot exceed the extent of the asset attributable to the pre-petition services of the debtor. See Prochnow v. Apex Props., Inc. (In re Prochnow), 467 B.R. 656, 663-64 (C.D.Ill.2012) (holding commissions from pre-petition services are part of the bankruptcy estate, but commissions from post-petition services are not); Larson v. Cameron (In re Larson), 147 B.R. 39, 44 (Bankr.D.N.D.1992) (holding portion of stock options which depends on performance of post-petition services are not estate property).
In the instant matter, the majority concludes Longaker’s right to future salary and commissions is a contingent interest that became part of the bankruptcy estate when Longaker filed his petition. Ante at 661; see Stoebner v. Wick (In re Wick), 276 F.3d 412, 415 (8th Cir.2002); Ran v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425 (9th Cir.1984). Upon close reading, Wick and Ryerson do not support the majority’s classification of Longaker’s interest. In Wick, a Chapter 7 debtor had stock options which entitled her to a 24.5% ownership stake in a company. The interest was contingent on her continued employment for one year following the signing of the stock option. At the time she filed for Chapter 7, Wick had been employed by the company for four months. We recognized the value of the stock options was due in part to the post-petition work Wick performed to complete the vesting period, and Wick should “receive[ ] the benefit of her post-petition labor, as mandated by 11 U.S.C. § 541(a)(6).” Wick, 276 F.3d at 417. The same is true in Longaker’s case. The second and third years of his employment agreement compensate him for labor performed post-petition. He should get the benefit of that labor.
In Ryerson, a manager at an insurance company signed a contract which entitled him to termination payments of a certain figure, multiplied by his number of years of service as a manager. One year of service was a condition precedent to eligibility. When he filed his Chapter 7 peti *666 tion, Ryerson had already served four years, and was thus qualified to receive payments. Ryerson argued the payments belonged to him because at the time he filed his petition, he had not yet been terminated, and- therefore had no interest in the termination payments. The Ninth Circuit rejected his argument and held the termination payments were estate property. Ryerson is of little help. There, the only post-petition “service” Ryerson was required to perform was getting fired. He had already performed the work that entitled him to the benefit. Booth v. Vaughan (In re Booth), 260 B.R. 281, 289 (6th Cir. BAP 2001) (“[T]he payment in Ryerson was grounded in a prepetition contract and was based on the debtor’s prepetition services.”). Here, by contrast, Longaker had not yet performed any of the work that entitled him to the salary and commissions the second and third years of the employment agreement provided him. The termination payments in Ryerson are, in short, more “sufficiently rooted in the pre-bankruptcy past” than Longaker’s post-petition, yet-to-be-performed job activities. Segal, 382 U.S. at 380, 86 S.Ct. 511. Merely designating Longaker’s interest as contingent and lumping pre-and post-petition services together not only strays from our prior recognition that contingent interests are estate property only to the extent they are attributable to the debtor’s pre-petition services, but also inappropriately advances the creditor’s interest in repayment over the debtor’s interest in starting over unsaddled by debt. If Longaker’s employment contract had been for twenty years rather than three years, the majority’s definition would direct the remaining nineteen years of salary and commissions to the estate. This is hardly the “fresh start” § 541 intends.
The majority nevertheless concludes that even if § 541(a)(6)’s reservation of earnings from post-petition services theoretically applied to the instant matter, Longaker still would not be entitled to his salary and commissions because he did not actually perform any post-petition services. Ante at 661-62; see In re A’Hearn, No. 11-00615, 2011 WL 4704235, at *6 (Bankr.N.D.Iowa Oct. 4, 2011). This cannot be correct. The doctrine of prevention provides “where a party to a contract is the cause of the failure of performance of the obligation due him or her, that party cannot in any way take advantage of that failure.” 13 Richard A. Lord, Williston on Contracts § 39:3 (4th ed. 2000); see La Societe Generale Immobiliere v. Minneapolis Cmty. Dev. Agency, 44 F.3d 629, 638 (8th Cir.1994) (quoting Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn.1984)). We have recognized without ambiguity the prevention doctrine applies in bankruptcy cases. Stevenson v. Stevenson Assocs. (In re Stevenson Assocs.), 777 F.2d 415, 419-20 (8th Cir.1985). The rationale behind the doctrine is two-fold. The first rationale is equitable. It is unfair for one who prevents the fulfillment of a condition precedent to rely on the nonoccurrence of that condition to defeat his or her liability. Omaha Pub. Power Dist. v. Emp’rs’ Fire Ins. Co., 327 F.2d 912, 916 (8th Cir.1964); Nodland v. Chirpich, 307 Minn. 360, 240 N.W.2d 513, 516-17 (1976) (quotation and citation omitted); Lord, supra, § 39:4. Second, it emanates from the promise of good-faith performance, which Minnesota law implies in every contract. Crotty, 356 N.W.2d at 45 (“[Ejvery contract contains an implied condition that each party will not unjustifiably hinder the other party from performing.”).
Consider an example. A company tells its remotely-located salesperson he must call by Friday at noon and report his sales figures to receive a bonus. The company then disconnects its phone lines, effectively preventing the salesperson from calling. In such a case, the prevention doctrine would forbid the company from raising the failure of the condition precedent — report *667 ing the sales figures — as grounds to avoid paying a bonus. Because the company prevented the salesperson from reporting his sales figures and thus fulfilling the condition, the company cannot rely on the non-occurrence of that condition to defeat its liability.
Just so here. Boston Scientific prevented Longaker from actually providing post-petition services by firing him. Boston Scientific has, in other words, prevented Longaker from fulfilling the condition precedent. It should not be allowed to rely on the non-occurrence of that condition to avoid paying the salary and commissions to Longaker. Yet' the majority allows Boston Scientific to do exactly that, and in doing so, sanctions a result that is inequitable and inconsistent with Minnesota contract principles.[5]
I would hold Longaker has standing, and if the district court concluded on remand that Boston Scientific breached the employment contract, Longaker would be entitled to the portion of his salary and commissions attributable to his post-petition services. Holding as such hews more closely to our prior construction of the statute and the balance § 541 strikes between creditors’ right to repayment and the debtor’s right to a “fresh start.” It also possesses the benefit of fidelity to long-settled principles of equity and contract interpretation. Because I cannot join the majority’s opinion to the contrary, I respectfully dissent.

. The majority states “[m]erely terminating an employee’s contract does not amount to misconduct under the prevention doctrine.” Ante at 662 n. 4; Stevenson, 777 F.2d at 420. Rather, the majority suggests more extreme misconduct — a "parade of horribles” — is necessary to invoke the doctrine. This is wrong. Nowhere does Stevenson insist on a “parade of horribles,” and the majority’s “cf." citation thereto appears to acknowledge it conjures a doctrinal requirement that does not exist. Minnesota law, which governs this breach of contract claim, shows it is the existence of culpable misconduct, rather than its extent, which invokes the prevention doctrine. See Crotty, 356 N.W.2d at 45 (holding the prevention doctrine applied where a homeowner unreasonably failed to allow a contractor to make repairs); Nodland, 240 N.W.2d at 517 (applying the doctrine where landowners wrongfully misrepresented a co-owner’s assent to a land sale contract).
The majority, without so much as a breath of analysis from the district court on the matter, takes it upon itself to conclude firing Longaker for a reason not enumerated in the employment contract does not amount to culpable misconduct. ”[W]e do not normally consider issues which the district court did not rule upon....” First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 816 (8th Cir.2003) (opinion of Wollman, J.). Unlike the majority, I am not keen to dispense with this rather fundamental principle. I believe Stevenson, the very case the majority cites, shows the way, and would remand for the district court to consider whether Longaker’s termination was culpable misconduct. Stevenson, 111 F.2d at 420-21 (acknowledging the factual record is unresolved and remanding to the bankruptcy court to consider the issue of culpable misconduct).