**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 15 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KOOPER CALDWELL,

Plaintiff-Appellee,

v.

WAL-MART STORES, INC.,

Defendant-Appellant.

No. 99-2272
(D.C. No. CIV-98-284-JHG)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant Wal-Mart Stores, Inc. (Wal-Mart) appeals from the district court's order denying its motion for judgment as a matter of law, for judgment notwithstanding the verdict, or alternatively, for a new trial. We affirm.

Plaintiff Kooper Caldwell filed this case in state court after he slipped and fell in an aisle at the Wal-Mart store in Alamogordo, New Mexico, sustaining a broken femur. Wal-Mart removed the case to federal district court. A jury awarded Caldwell the sum of $35,000 in damages for his injuries.

Caldwell slipped and fell in an aisle where bottled water and various other drink products were sold. Caldwell testified at trial that after he fell, he noticed a puddle of water on the floor where he had slipped. The water was clear and covered one full tile and parts of other surrounding tiles. [1] He did not notice the source of the water.

Nicole Callais, a Wal-Mart employee, testified that she had been stocking merchandise in the aisle where Caldwell fell approximately five minutes before she heard the "code white" over Wal-Mart's intercom system. [2] Before leaving the aisle, she had conducted a safety sweep to insure that she had not left anything on

---

[1] On cross-examination, counsel for Wal-Mart elicited a prior description of the puddle of water from Caldwell's deposition, in which he described it as eighteen inches in size and circular or irregularly shaped.

[2] Wal-Mart employs a series of code words for alerting employees to various incidents at the store. "Code white" signifies an incident involving a customer, or an injured customer.

the floor and that there were no hazards there. Callais testified that she did not see any water on the floor when she left the aisle.

After she heard the code white, Callais returned to the aisle where she saw Caldwell lying on the floor surrounded by a group of people. She did not notice any water on the floor when she returned.

Mrs. Caldwell was in the store shopping separately from her husband when the accident occurred. Wal-Mart paged her over its intercom system, and an employee led her to the aisle where Caldwell had fallen. Mrs. Caldwell testified that she observed liquid running along the lower panel on the floor in the area where Caldwell was lying. The floor was white, and the liquid was clear. Mrs. Caldwell described the water spots as follows:

> There were quite a few spots. They varied in size. Some had dried. Sometimes when we have stains on the floor, when they're there for a while and when they start drying, you'll have residue and you can see where a stain has been there for a while. There were a few of those in varying sizes.

Appellee's Supp. App. at 15.

The largest spot was approximately six inches by four inches, and the smallest about the size of a dollar coin. When asked to quantify the spots, Mrs. Caldwell indicated that there were four or five of them. She further testified that she saw a "mashed-up jug" sitting at the edge of the counter at the bottom shelf. Id. at 17. She did not see the jug leaking, but it was half empty.

Lance Dyer, an emergency medical technician who responded to the accident, testified that he observed a spot or puddle of water at the scene near Caldwell's feet. The spot was approximately twelve inches in diameter. It had a black skid mark running through it, which he assumed was caused when Caldwell slipped and fell.

Roy Velez, an assistant manager at Wal-Mart, arrived at the scene shortly after the code white had been issued. A number of other employees already were there. He did not notice any water on the floor; he believed it was cleaned up before he got there. He did not notice any source for the spilled water. Velez stated that due to Wal-Mart's white floors, water spilled on the floor would have been transparent.

Michael Esquero, also a Wal-Mart assistant manager, heard the code white and went to the scene. He used paper towels to clean up a small spot of clear liquid on the floor, approximately four inches in size, which he assumed was water. This spot was approximately two to three feet away from where Caldwell was lying. Esquero looked for other liquid spills in the aisle and saw none. Esquero did not see any smashed jugs of water or any source for the spilled liquid.

Patsy Telles, a Wal-Mart employee, heard a loud thump when Caldwell fell. She found him lying in the aisle. She did not notice any liquid on the floor,

except a small puddle of clear liquid about three or four inches in diameter, above his head. She searched the aisle for other liquid spots, and found none. She did not notice any source for the liquid.

After all the evidence had been presented, Wal-Mart moved for judgment as a matter of law (JMOL). Wal-Mart argued that there had been no evidence that it had either caused the spill or known about the spill prior to the accident. The district court denied the motion. After the jury returned its verdict, Wal-Mart renewed this argument in its Fed. R. Civ. P. 50 motion for judgment as a matter of law. It also argued that the district court had erred by not allowing Wal-Mart to attack Caldwell's credibility, and by improperly admitting and denying certain jury instructions. Wal-Mart renews each of these arguments on appeal.

1. Evidentiary sufficiency to support verdict for plaintiff

> We review de novo a district court's disposition of a motion for judgment as a matter of law, applying the same standard as the district court. Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for those of the jury. However, we must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. We must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party.

Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999) (quotations omitted).

In New Mexico, the owner of a premises is not the insurer of the safety of its visitors. See Brooks v. K-Mart Corp., 964 P.2d 98, 101 (N.M. 1998). Neither the doctrine of *res ipsa loquitur* nor the concept of strict liability applies in slip-and-fall cases. See id. (stating that strict liability does not apply); Holguin v. Smith's Food King Properties, Inc., 737 P.2d 96, 98 (N.M. Ct. App. 1987) (stating that *res ipsa loquitur* does not apply, quoting Kitts v. Shop Rite Foods, Inc., 323 P.2d 282, 284 (N.M. 1958)).

Rather, a plaintiff seeking to hold a premises owner liable for a slip-and-fall accident must show that the owner "failed to exercise ordinary care by rendering safe an unreasonably dangerous condition on the premises." Brooks, 964 P.2d at 101. There are two ways of establishing this element of plaintiff's case. First, he may prove that the owner or his employees or agents caused the dangerous condition to exist, resulting in his injury. See Holguin, 737 P.2d at 98. Second, plaintiff may prove that the owner knew, or should reasonably have known, of the condition yet failed to rectify it. See Brooks, 964 P.2d at 101.

Caldwell relies on the second theory of liability. He offered no proof that Wal-Mart or its employees caused the water on which he slipped to be spilled on the floor. Therefore, in order to make his case, he had to show that Wal-Mart had

-6-

actual or constructive knowledge of the spilled liquid on the floor, but unreasonably failed to clean it up or to warn him of the spill.

New Mexico cases have explored the question of knowledge of a dangerous condition in some detail. The general rule is that the owner of a premises is charged with knowledge of conditions of which he would be aware upon reasonable inspection of the premises. See Brooks, 964 P.2d at 99 (quoting New Mexico Uniform Jury Instruction 13-1318 (1998)). An exception to this rule arises where there is a recurring, dangerous condition on the premises; in that case, the owner need not have actual or constructive knowledge of the particular hazard which caused the accident. See Mahoney v. J.C. Penney Co., 377 P.2d 663, 673 (N.M. 1962). Otherwise, the owner is responsible if the condition has existed long enough to allow him sufficient opportunity to discover it. See id.; De Baca v. Kahn, 161 P.2d 630, 634 (N.M. 1945) (quotation omitted).

The evidence here was sufficient for the jury to have determined that Wal-Mart had actual or constructive notice of the liquid spilled on its aisle. Several witnesses testified to water or other clear liquid on the floor near the location of Caldwell's accident. Mrs. Caldwell testified that some of the water spots had been there long enough to dry and leave a residue. This suggests a condition of some duration, or perhaps even a recurring condition. Circumstantial evidence may be used to prove actual or constructive notice of

-7-

a dangerous condition. See Gutierrez v. Albertsons, Inc., 824 P.2d 1058, 1062-64 (N.M. Ct. App. 1991). There was a legally sufficient evidentiary basis for the jury's award in this case.

2. Jury instructions

Wal-Mart complains that the district court incorrectly instructed the jury concerning New Mexico's law of premises liability. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000) (quotation omitted).

Wal-Mart objects to the district court's use of plaintiff's instruction number five, which stated in pertinent part as follows:

> TO ESTABLISH THE CLAIM OF NEGLIGENCE ON THE PART OF DEFENDANT, THE PLAINTIFF HAS THE BURDEN OF PROVING AT LEAST ONE OF THE FOLLOWING CONTENTIONS:
>
> 1. THAT DEFENDANT PERMITTED WATER OR ANOTHER SUBSTANCE TO ACCUMULATE ON ITS AISLE FLOOR, CREATING A SLIP AND FALL HAZARD; OR
>
> 2. THAT DEFENDANT FAILED TO KEEP ITS PREMISES AND AISLES SAFE FOR USE BY THE PLAINTIFF.

Appellant's App. at 37.

The instruction also informed the jury that Caldwell had the burden of proving that Wal-Mart's negligence was the proximate cause of his injuries and damages. See id. Wal-Mart argues that the instruction allowed the jury to impose liability on a strict liability theory, simply because there was water on the floor.

Even if the instruction was erroneous in allowing imposition of liability solely because Wal-Mart "permitted" water to accumulate on its aisle floor, such error was not reversible, in light of the instructions taken as a whole. In particular, the district court's instruction number fourteen quoted word for word New Mexico Uniform Jury Instruction 13-1319, which has been designated for use in slip-and-fall cases: [3]

---

[3] The New Mexico pattern jury instructions actually contain two alternative uniform instructions that may be used in slip-and-fall cases. Uniform instruction 13-1319, given here, is designed for use in cases where the employer caused the dangerous condition or had actual notice of it. Uniform instruction 13-1318, which discusses the employer's duty to inspect his premises, is designed for use in cases where the employer has only constructive notice of the condition.

In its reply brief, Wal-Mart raises an objection to the district court's failure to give an instruction based on 13-1318 rather than 13-1319. See Appellant's Reply Br. at 6. Wal-Mart did not object to the giving of instruction number fourteen in the district court, however, and did not object to the lack of a 13-1318 instruction in this court until its reply brief. A party wishing to object to a jury instruction must do so before the jury retires to consider its verdict; otherwise, the issue is waived. See Fed. R. Civ. P. 51. Furthermore, a party's proffer of its own instruction does not constitute an objection to the one given. See United States v. Voss, 82 F.3d 1521, 1530 (10th Cir. 1996). Finally, issues not raised in an appellant's opening brief may also be considered waived. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994). We therefore
(continued...)

The defendant was not an insurer of the safety of the plaintiff, but it did owe him the duty to exercise ordinary care to keep the premises in a safe condition for the plaintiff's use. If a dangerous condition existed on defendant's premises which was caused by the defendant or its employees, or if the defendant had actual knowledge of such a condition, although not caused by it or its employees, then, in either event, it was its duty to exercise ordinary care to correct or to warn the plaintiff of the presence of such dangerous condition. A dangerous condition is a condition which a person exercising ordinary care would forsee as likely to cause injury to the one exercising ordinary care for his own safety.

Appellee's Supp. App. at 225-26.

While the statements in Wal-Mart's proposed jury instruction number eight might have more correctly instructed the jury concerning Caldwell's burden of proof on the issue of negligence, any error in giving instruction number five was cured by the other instructions given by the district court, including instruction number fourteen. The error was not reversible.

3. Impeachment evidence

Wal-Mart contends that the district court erred in excluding evidence that it offered to attack Caldwell's credibility. Wal-Mart attempted to show that Caldwell's credibility was adversely affected because he had promised proceeds from this lawsuit to former business partners who had sued him. It also sought to introduce opinion evidence of Caldwell's allegedly untruthful character.

---

[3](...continued)
consider Wal-Mart's argument waived for purposes of appeal.

We review the district court's decision to exclude this evidence for an abuse of discretion. See United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd., 210 F.3d 1207, 1230 (10th Cir. 2000).

Wal-Mart's counsel elicited on cross-examination of Caldwell that Caldwell had failed to mention in his answers to interrogatories a suit filed against him as the result of a failed business. Caldwell admitted that he had made a mistake and should have listed the suit. Counsel then pursued the questioning by asking Caldwell whether he had ever filed an answer to the suit. At this point, Caldwell's counsel objected on the basis of relevance. In the colloquy that followed, Wal-Mart's counsel explained:

> The reason – and I have to tie this together with this continuing testimony. He made a deal with these people who sued him, his partners in this business, that he would pay them money he owed them as soon as he settled this lawsuit with Wal-Mart. And I believe that goes to his motivation for testifying the way he's testifying now.

Appellee's Supp. App. at 100.

The district court properly rejected any further testimony about the other suit or Caldwell's motive for pursuing this action. The testimony was irrelevant, and unfairly prejudicial. See Fed. R. Evid. 402, 403, 404(b). Absent some evidence of fraud on Caldwell's part (and none was proffered), evidence of his financial motivation to bring the suit was not relevant to any of the issues in this case. Compare Schendel v. Hennepin County Med. Ctr., 484 N.W.2d 803, 810

-11-

(Minn. Ct. App. 1992) (holding that trial court properly excluded financial evidence concerning injured plaintiff's motivation to go back to work, where record contained no evidence that his injuries were feigned) with C.L. Maddox, Inc. v. Royal Ins. Co. of Am., 567 N.E.2d 749, 755 (Ill. App. 1991) (holding that evidence of sole shareholder's financial difficulties was admissible to show his motive to commit arson). [4] The district court did not abuse its discretion in refusing to admit this evidence.

Wal-Mart also sought to present testimony from the comptroller of the parent company of Caldwell's former employer to the effect that Caldwell was an untruthful person. The district court excluded this evidence, among other reasons, because the witness did not lay an adequate foundation for knowledge of Caldwell's character for truthfulness. We cannot say that the district court abused its discretion in excluding this testimony.

---

[4] In Gaudin v. Shell Oil Co., 132 F.R.D. 178, 179 (E.D. La. 1990), the court stated, without explanation, that a plaintiff's credit and financial history was admissible to show that she had an improper motive in bringing the suit. This holding is remarkable, to say the least, and a leading commentator's view of it shows how far afield it is from the general rule. See 22 Charles A. Wright & Kenneth W. Graham, Federal Practice & Procedure § 5240 (2000 Supp.) ("Shocking ruling unless there is more to case than appears from opinion").

The judgment of the United States District Court for the District of

New Mexico is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge