ZOBEL & DAHL CONSTRUCTION, plaintiff, counterclaim defendant, and third party plaintiff, Respondent,

v.

David CROTTY, defendant and counter-claimant, Appellant,

v.

BUILDERS SUPPLY COMPANY, third party defendant, Respondent,

Summit Masonry, et al., third party defendants, Respondents,

Bob Olson, third party defendant, Respondent.

No. C5–83–879.

Supreme Court of Minnesota.

Oct. 12, 1984.

Charles B. Bateman, Duluth, for appellant.

Thomas L. Hunt, Duluth, for Zobel & Dahl Const.

Thomas R. Thibodeau, Duluth, for Builders Supply Co.

Heard, considered and decided by the court en banc without oral argument.

TODD, Justice.

Zobel & Dahl Construction sued David Crotty for Crotty's failure to pay Zobel & Dahl for the construction of a residence near Duluth, Minnesota. Crotty had paid Zobel & Dahl $67,000, but refused to pay the remaining balance of the contract price because of certain defects in the house. Zobel & Dahl claimed Crotty owed $13,552.56 and impleaded several of the subcontractors including Builders Supply Company, suppliers of roof trusses.

A jury trial was conducted and answers to special interrogatories returned by the jury found Crotty had breached the contract by failing to allow Zobel & Dahl to repair the defects. The jury also found that Crotty's damages for the roof trusses and other defects totalled $9,350. Zobel & Dahl's damages consisted of the remaining contract price plus interest for a total of $10,872.13. The St. Louis County District Court, the Honorable Charles T. Barnes presiding, entered an Order for Judgment on March 24, 1983, in conformance with the jury's answers to the special interrogatories. On May 2, 1983, Judge Barnes denied Crotty's post trial motions for a new trial or judgment notwithstanding the verdict. Crotty appeals from the denial of these motions and the resulting judgment and seeks relief against respondents Zobel & Dahl and Builders Supply Company. We affirm with respect to the issues of liability, but reverse the determination of damages.

David Crotty and Zobel & Dahl entered into a contract on November 14, 1976 to have Zobel & Dahl construct a home for Crotty. After various "change orders," the contract amount was $74,616.60, subject to a credit of $144 for fixtures not installed. Crotty paid $67,000, leaving a total unpaid balance of $7,472.60 by May 1977. The contract provided that final payment was due "upon completion."

Crotty moved into his home in March 1977. During the next several months the builders continued to work on the house, correcting various minor problems. At trial, Crotty contended he informed the builder in May 1977 that the garage roof had begun sagging. Raymond Dahl, one of the partners of Zobel & Dahl, testified that he had no conversations with Crotty about the roof problem until January 1978. Zobel & Dahl sent Crotty a final itemized bill for services in August 1977. Dahl said he knew some defects existed at the time of the final billing, but that he did not know, in August 1977, about the sagging roof.

Crotty and the contractors discussed the defects in the home on many occasions. Dahl testified that after Crotty moved into the house, he repeatedly tried to get Crotty to either give him a "punch list"—a list of defects in the house—or pay the builders in full. Respondent established that it is industry practice to allow the owner to submit a punch list and have defects corrected before making final payment to the contractor. Crotty said he did not pay the bill because "the house wasn't done and I wasn't going to pay the bill until Mr. Dahl came back and finished my house." Dahl was willing to make the repairs, but Crotty told him his attorney had advised him not to allow the builders to make any repairs until they agreed to waive their mechanics lien rights. Dahl refused to waive his lien rights.

In January 1978, Crotty finally submitted a list of 29 defects in the home that he wanted repaired. Crotty, however, conditioned his request by providing that the expiration date of the mechanics liens would not be extended by this act since the work was not new construction, but old repairs. Zobel & Dahl would not agree to this proposal. They argued at trial that Crotty was simply stalling because he did

not have the money to pay them. Zobel & Dahl admitted at all times, however, that those defects did exist and that they included a $150 masonry item, twenty-seven other minor defects totalling $1,000, and a roof truss problem that would cost $8,200 to remedy. The jury found Crotty's damages in these amounts came to $9,350. The trial court did not allow this amount to offset Zobel & Dahl's recovery of $10,872.13 because of the jury finding that Crotty had breached the contract by failing to pay and by not allowing the builders to complete the project.

The legal issues to be resolved are:

1. Whether the trial court erred in instructing the jury to determine whether Crotty breached the contract by refusing to allow Zobel & Dahl to complete the project;

2. Whether the trial court erred in awarding Zobel & Dahl the full amount of the contract price for the house based on the jury finding that the buyer had breached the contract;

3. Whether the trial court erred in computing the amount of prejudgment interest to be awarded to Zobel & Dahl;

4. Whether Crotty should have been allowed to amend his pleadings at trial and obtain a jury instruction on his negligence and product liability claims against Builders Supply;

5. Whether the trial court erred in admitting evidence of the consent order which revoked Crotty's real estate broker's license.

1. The trial court posed the following special interrogatory: "Did Mr. Crotty breach his contract with Zobel & Dahl by refusing to allow them to complete the project?"

■ The court instructed the jury that "if upon substantial completion of the project defects are noted and brought to the contractor's attention, the contractor does have the right to enter the premises to cure the defects and complete the contract." Crotty contends that this question reflects the trial court's misapplication of the Uniform Commercial Code's right to

cure concept to a construction case. The court, in the jury instructions and in its memorandum accompanying its order for judgment, never referred to the U.C.C. and we find no basis for concluding that the court applied the Code instead of common law principles.

■ Our decisions support a finding of breach of contract for an owner's failure to allow a builder to complete construction. Generally, contract performance is excused when it is hindered or rendered impossible by the other party. *Instrumentation Services, Inc. v. General Resource Corp.*, 283 N.W.2d 902, 908 (Minn.1979); *Nodland v. Chirpich*, 307 Minn. 360, 366–67, 240 N.W.2d 513, 516 (1976); *Wormsbecker v. Donovan Construction Co.*, 247 Minn. 32, 42, 76 N.W.2d 643, 650 (1956). Further, a breach of contract occurs under those circumstances. *Instrumentation Services, supra* at 908–909. Stated differently, every contract contains an implied condition that each party will not unjustifiably hinder the other from performing. *See* J. Calamari and J. Perillo, *The Law of Contracts*, 441–444 (1977).

■ In a contract for construction of a home, an owner who unreasonably fails to allow the contractor to complete the project excuses the contractor's performance and breaches the contract. *See Kaltoft v. Nielsen*, 252 Ia. 249, 106 N.W.2d 597, 602 (1960) (construction contracts contain implied terms that person for whom work will be done will not obstruct or delay contractor).

■ We hold that the foregoing principles fully justified the court in submitting the special interrogatory and instructing the jury as it did on this issue. The judge has broad discretion in submitting special interrogatories to the jury. *Hill v. Okay Construction Co., Inc.*, 312 Minn. 324, 340, 252 N.W.2d 107, 118 (1977). Where there is evidence reasonably tending to prove the existence of a factual issue, the court may submit the issue to the jury. *See Oltmans v. Orthopaedic and Fracture Clinic, P.A.*, 278 N.W.2d 538, 541 (Minn.1979).

The question of whether Crotty unreasonably hindered completion of the house by conditioning Zobel & Dahl's access to the property upon Dahl's waiver of lien rights was a factual issue for the jury to resolve. As the trial judge concluded, the credibility of witnesses played an important role in that determination because of the sharp conflicts in testimony. We find ample support in the record for the jury's verdict that Crotty breached the contract. *See Faust v. Parrott*, 270 N.W.2d 117, 120 (Minn.1978). Crotty admitted he did not pay because he was waiting for Zobel & Dahl to finish the house. The builders at all times were willing to make the repairs on the punch list. Crotty, however, would not permit the contractors to come onto his property to repair the defects unless they waived their lien rights. Expert witnesses for both parties agreed they would not give up their lien rights in order to gain access to property. The jury must have believed that Crotty unreasonably prevented Zobel & Dahl from completing construction.

2. The trial court awarded Zobel & Dahl the full contract price even though the contractor had only partially performed because of its inability to repair the numerous defects in the house, most notably the sagging roof.

Crotty contends that the contract amount should have been offset by $9,350, the amount the jury found necessary to compensate Crotty for damages resulting from the roof truss problem. Appellant correctly notes that the trial court erred in awarding Zobel & Dahl the full contract amount, but errs himself in contending he is entitled to the cost of repair.

In construction contracts, if the work has commenced and the buyer breaches, the contractor is entitled to the unpaid contract price less the amount it would have cost him to complete his performance. *See Instrumentation Services v. General Resource*, 283 N.W.2d 902, 909 (Minn.1979); Calamari, *supra* at 559.

Because no evidence was presented on this issue, we find it necessary to remand the case on the issue of damages.

3. The trial court awarded Zobel & Dahl the interest on the entire contract price. The total judgment of $10,872.13 included interest in the amount of $3,399.43. We agree with the trial court that the damages were liquidated. However, because the trial court awarded interest on the entire contract amount without deduction of the savings to the contractor from not having to complete the contract, the interest must be recomputed on remand.

4. We deal next with the liability of third party defendant Builders Supply, the subcontractor who provided the roof trusses. Builders Supply dealt only with Zobel & Dahl and had no contract with Crotty. Builders Supply was brought into the case when Zobel & Dahl served a third-party complaint against it alleging negligence and breach of warranty. Crotty made no direct claims against Builders Supply until after trial began, when he sought to amend his pleadings to include negligence and products liability claims against the third-party defendant. The trial court denied the amendment, but nevertheless dismissed with prejudice Crotty's claims against Builders Supply. The court submitted a special interrogatory on whether Builders Supply breached its contract with Zobel & Dahl. The jury found it had not. The court did not instruct the jury to determine breach of warranty, negligence or products liability claims against Builders Supply. The parties have inferred from this that the court found these claims barred by *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981) and *Lesmeister v. Dilly*, 330 N.W.2d 95 (Minn.1983). *Superwood* held:

> [T]hat economic losses that arise out of commercial transactions, *except those involving personal injury or damage to other property*, are not recoverable under the tort theories of negligence or strict products liability.

311 N.W.2d at 162 (emphasis added). *Superwood* expressly carves out an exception for economic losses in commercial transactions involving "damage to other property."

■ We find the present record inadequate to determine the trial court's basis for dismissing with prejudice Crotty's claims against Builders Supply. There is no discussion of the rationale for the dismissal in the transcript provided to this court or in the memorandum accompanying the order denying Crotty's post-trial motions. To dispose of these issues on appeal in the absence of adequate grounds for the court's decision would be tantamount to allowing the parties to submit hypothetical or speculative questions or to secure an advisory opinion. This the court has consistently refused to do. *See F. & H. Investment Co. v. Sackman-Gilliland Corp.*, 305 Minn. 155, 232 N.W.2d 769 (1975). We direct that on remand appellant be permitted to amend his complaint to assert directly his claims against Builders Supply. We, of course, express no opinion on the merits of those claims.

5. Crotty contends the trial court erred in allowing questions to be asked of him regarding a consent order under which he voluntarily gave up his real estate broker's license without admission of wrongdoing. Crotty argues that this was essentially a plea of nolo contendere which is inadmissible as evidence under Minn.R.Evid. 410. The rule reads:

> Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil, criminal, or administrative action, case, or proceeding whether offered for or against the person who made the plea or offer.

■ The rule and its comments refer only to criminal pleas, not pleas in a civil administrative setting like that in which Crotty was involved. He cites no case law to support the extension of Rule 410 to pleas of nolo contendere in a civil setting. We therefore find no prejudicial error was committed by the trial court in admitting the evidence.

Affirmed in part, reversed in part and remanded.