# United States Court of Appeal

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2010
No. 96-2094

_____

ITT Hartford Life & Annuity Insurance &ast;
Company, formerly known as ITT Life &ast;
Insurance Corporation, a Wisconsin &ast;
Corporation, &ast;
&ast;
    Plaintiff - Appellee, &ast;
&ast;
 v. &ast;
&ast;
Amerishare Investors, Inc., a Florida &ast;
corporation; &ast;
&ast;
    Defendants. &ast;  Appeals from the United States
&ast; District Court for the
Randy Stelk; John Craft; &ast; Western District of Missouri
&ast;
    Defendants - Appellants, &ast;
&ast;
Amerishare Communications, Inc., &ast;
a Florida corporation; Amerishare &ast;
Agency, Inc., a NewYork corporation; &ast;
Agent Investors Holding Company, a &ast;
Georgia corporation, &ast;
&ast;
    Defendants. &ast;
&ast;

Submitted:  February 13, 1997

Filed: January 9, 1997

Before McMILLIAN, JOHN R. GIBSON, and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Amerishare Investors, Inc. Randy Stelk, John Craft, Amerishare Communications, Inc. and Amerishare Agency, Inc. appeal from summary judgment entered on ITT Hartford's action to collect on a loan and loan guarantees. They argue that the district court erred in not enforcing the parties' arbitration agreement and in entering summary judgment. We affirm.

Amerishare Investors[1] was an insurance marketing company which had a national distribution system of independent sales agents. ITT Hartford is a life, annuity, accident and health insurer.

In early 1992, ITT approached Amerishare Investors about becoming the exclusive agent for ITT life insurance and annuity products. On February 6, 1992, ITT and Amerishare Investors entered into a marketing agreement. Under the agreement, Amerishare Investors agreed to market and sell through its sales agents life insurance and annuity products underwritten by ITT. Amerishare Investors was to meet certain production goals, and ITT Hartford was "to provide Amerishare with certain services, financial assistance and other support."

---

[1]Amerishare Communications, Inc. and Amerishare Agency, Inc. are subsidiaries of Amerishare Investors. Randy Stelk and John Craft founded Amerishare. We will sometimes refer to the appellants collectively as "Amerishare," and when necessary to our discussion, we will identify them separately.

The marketing agreement attached a letter agreement, dated February 6, 1992, memorializing ITT Hartford's obligation to provide bridge financing. The letter agreement recognized that Amerishare Investors would need financing during the transition from its current insurance carrier to ITT Hartford. ITT Hartford agreed to provide temporary financial assistance of up to $300,000 per month for up to six months (or until Amerishare Investors achieved a monthly cash flow of $300,000). Financial assistance was contingent upon the two parties entering into a marketing agreement. The letter agreement provided that the bridge financing loan would have an interest rate of 1% over prime as of the loan date, and would be repaid in monthly installments as mutually agreed by the parties. Repayment would begin when Amerishare achieved a monthly cash flow of $300,000, or one year from the date of the loan.

The marketing agreement established that ITT Hartford would be the underwriter for the insurance policies sold by Amerishare. The agreement set forth various duties of ITT Hartford, including ITT Hartford's obligation to issue policies, pay commissions, obtain licensing, and perform actuarial, billing, and collection services.

The marketing agreement contained an arbitration provision:

> It is the intention of the [ITT Life Insurance Corporation] and Amerishare that the customs and practices of the insurance industry shall be given full effect in the operation and interpretation of this Agreement. The parties agree to act in all things with the good faith. If the Company and Amerishare cannot, however, mutually resolve a dispute which arises out of or relates to this Agreement, the dispute shall be decided through arbitration as set forth herein. The arbitrators shall base their decision on the terms and conditions of this Agreement and, as necessary, on the customs and practices of the insurance industry rather than solely on a strict interpretation of the applicable law.

The agreement outlined the procedure for the initiation of arbitration, the

selection of the arbitrators, and the mechanics of the arbitration proceeding. The agreement provided that Minnesota law governed. Amerishare Investors was the signatory to the marketing agreement.[2]

In November 1992, Amerishare Investors executed to ITT Hartford a loan agreement, a promissory note, and a security agreement. The preamble to the loan agreement referenced the marketing agreement, noting that: "Amerishare and ITT Life have entered into Marketing Agreement effective March 6, 1992," and the agreement "evidences a relationship of trust and mutual respect." The loan agreement stated that ITT agreed to advance a $4,350,000 line of credit to Amerishare to provide "assistance to Amerishare in the transition, start-up and building of a large and effective agency system." Amerishare agreed to borrow under the line of credit only to the extent necessary to meet its current working capital requirements. The loan agreement provided that the first advance under the loan agreement would be used to repay the $2,987,627 in promissory notes executed under the line of credit. These notes were amounts from the bridge financing that ITT Hartford had provided for in the marketing agreement. The loan agreement also provided:

> This Agreement and the writings executed herewith and hereafter constitute the sole agreement and understanding of Amerishare and ITT Life with respect to the transactions described herein, and supersede and replace all prior written and oral agreements and understandings with respect thereto.

The parties contemplated that Amerishare would repay the loan from "all commissions and other amounts payable to Amerishare under the Marketing Agreement or any other agreement between Amerishare and ITT Life." The agreement contained

---

[2]Agent Investors Holding Company was also a signatory to the marketing agreement. The court dismissed Agent Investors from the case pursuant to a stipulation of the parties.

provisions relating to the rights and remedies in the event of default, including a provision allowing ITT Life to terminate the line of credit and declare all principal interest and other charges due and payable. The agreement defined one of the events of default as "[n]otice of termination of the Marketing Agreement." The loan agreement contained a paragraph relating to jurisdiction and venue "in connection with any controversy related in any way to this Agreement or any of the Loan Documents."

The agreement provided:

> Amerishare consents to the personal jurisdiction of the state and federal courts located in the State of Minnesota in connection with any controversy related in any way to this Agreement or any of the Loan Documents, waives any argument that venue in such forums is not convenient, and agrees that any litigation initiated by Amerishare against ITT Life in connection with this Agreement or any of the Loan Documents will be venued in either the District Court of Hennepin County, Minnesota, or the United States District Court, District of Minnesota; provided that any proceeding commenced by ITT Life hereunder will be commenced and maintained in federal court unless the Minnesota federal courts lack subject matter jurisdiction with respect to the claims made in such proceeding; and provided that ITT Life will not contest removal to or seek remand from any Minnesota federal district court with respect to any proceeding commenced by ITT Life hereunder except on the basis of lack of federal court subject matter jurisdiction.

The agreement did not contain an arbitration clause.

Amerishare Investors secured its repayment obligation by granting ITT Hartford a first security interest in all of its assets, including shares of stock it owned in Amerishare Agency and Amerishare Communications. Amerishare Communications and Amerishare Agency also executed guaranty and security agreements dated November 13, 1992. Amerishare Communications and Amerishare Agency secured their guaranties by granting ITT Hartford a first security interest in their assets. Stelk

and Craft granted ITT Hartford a first security interest in accounts, inventory, various claims they owned, and their shares of Amerishare stock. Amerishare agreed that it would not sell or dispose of any of the collateral. The guarantors agreed to pay all costs of collection. The security agreements contained the same jurisdiction and venue clause set forth in the loan agreement, specifically providing that the guarantors consented to "the personal jurisdiction of the state and federal courts located in the State of Minnesota in connection with any controversy related in any way to this Agreement." Like the loan agreement, the security agreements did not contain an arbitration provision.

The parties amended the marketing agreement, effective August 8, 1994, lowering Amerishare's production requirements. The amendment gave ITT the right to terminate the marketing agreement if Amerishare did not meet the new production requirements. Amerishare failed to meet the reduced production requirements, and on January 3, 1995, ITT Hartford notified Amerishare that it was terminating the marketing agreement. The notice of termination caused an "Event of Default" under the loan agreement. ITT Hartford declared all principal and interest immediately due and filed suit to collect under the note and guaranties.

Amerishare filed a motion to dismiss for lack of subject matter jurisdiction, arguing that ITT's claims were subject to arbitration. In the alternative, Amerishare moved to compel arbitration and to stay the action pending arbitration. The magistrate judge denied Amerishare's motion to dismiss and motion to compel arbitration, concluding that the loan agreement was not subject to the arbitration provisions of the marketing agreement. The magistrate judge reasoned that the loan documents and marketing agreement "are not so closely linked as to impose or confer arbitration on issues and parties who did not contractually agree to arbitration."

ITT Hartford filed a motion for summary judgment. Although the magistrate judge was "inclined to grant" the motion because Amerishare did not deny liability

under the loan agreements, it nevertheless granted Amerishare 120 days to conduct discovery. No discovery was conducted. Instead, Amerishare filed affidavits from five people detailing ITT Hartford's alleged breaches of the marketing agreement and arguing that ITT Hartford caused its failure to meet production goals. Specifically, the affidavits explained that ITT Hartford was unable to handle the business generated by Amerishare and that it breached the marketing agreement by failing to obtain licensing to sell insurance in New Jersey, by incompetently handling applications for life insurance, and by refusing to pay commissions. The affidavits stated that ITT Hartford regularly lost blood and urine samples, failed to make timely decisions on insurance, and that ITT hired away Amerishare's sales force. Amerishare contended that the district court must order arbitration because the affidavits showed that ITT Hartford's complaint is premised on a breach of the marketing agreement, containing a mandatory arbitration clause. Amerishare argued alternatively that the affidavits raised a genuine issue of material fact as to liability and damages under the loan agreements. The district court rejected Amerishare's arguments, reasoning that the counterclaims based on the marketing agreement could proceed independently of the claims on the loan agreements.

The district court denied Amerishare's motion for reconsideration, pointing out that the parties filed a stipulation agreeing to dismiss the counterclaims based on alleged breaches of the marketing agreement and agreeing to submit the counterclaims to arbitration.

Amerishare now appeals, contending that the district court erred in refusing to compel arbitration of its claims, and in ordering summary judgment because there are disputed issues of material facts.

**I.**

When a party moves to compel arbitration, our role is to determine whether there

is an agreement between those parties which commits the subject matter of the dispute to arbitration.  I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d 396, 399 (8th Cir. 1986).  We examine arbitration agreements in the same light we examine any other contractual agreement.  See Perry v. Thomas, 482 U.S. 483, 492 & n. 9 (1987).

The Federal Arbitration Act mandates that courts shall direct parties to arbitration on issues to which an arbitration agreement has been signed.  See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  There is a presumption of arbitrability if the governing agreement contains an arbitration clause.  See AT&T Tech. Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986).  "[A]rbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  IBEW, Local 4 v. KTVI-TV, Inc., 985 F.2d 415, 416 (8th Cir. 1993) (internal quotation and citation omitted).  We resolve ambiguities as to the scope of an arbitration clause in favor of arbitration.  See id.  Nevertheless, neither state nor federal law confers a right of arbitration; the right must be found in a contract between the parties seeking to compel arbitration.  See, e.g., Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474-75 (1989); Schoenborn v. State Farm Auto Ins. Co., 495 N.W.2d 460, 463 (Minn. Ct. App. 1993).  A party who has not agreed to arbitrate a dispute cannot be forced to do so.  AT&T Tech., 475 U.S. at 648.

The district court held the arbitration provision of the marketing agreement did not control because the loan agreements did not contain an arbitration provision, and because Amerishare Communications, Amerishare Agency, Stelk, and Craft were not signatories to the marketing agreement.

Amerishare contends that given the broad "arising out of" language contained in the marketing agreement, ITT Hartford's claims fall within the scope of the arbitration provision.  Amerishare contends that the district court violated a key rule of contract

interpretation, and that "[a] contract and several writings relating to the same transaction must be construed with reference to each other." Knut. Co. v. Knutson Const. Co., 433 N.W. 2d 149, 151 (Minn. Ct. App. 1988). Amerishare contends the district court misconstrued the holding in Knutson by concluding that several writings should be construed together only when the writings are executed contemporaneously, and that the loan agreement is subject to the arbitration provision of the marketing agreement because the agreements are all part of a "single, unified contractual scheme."

In Knutson, plaintiffs sued to collect under a promissory note and personal guarantees. 433 N.W.2d at 150. The appellants executed the note and personal guaranties in connection with an asset purchase agreement. Id. The purchase agreement contained an arbitration provision. The Minnesota court ordered arbitration, concluding that the scope of the agreement showed that the parties intended the arbitration provision to apply to the loan dispute, noting that the arbitration language was broad; the Note and the Guaranty were executed at the same time as the Agreement; the Agreement specifically mentioned the Note and Guaranty, and provided that the Note was subject to the Agreement's terms and conditions. Id. at 150-151. Contrary to Amerishare's argument, the district court did not decide that the loan documents were not subject to the arbitration provision because the loan documents were not executed contemporaneously with the marketing agreement. The timing of the execution of the documents was simply one factor in deciding whether the parties intended to be bound by the arbitration provision.

In general, a stranger to a contract has no rights under the contract unless the third party is an intended beneficiary of the contract, or there is a duty owed to the third party that is discharged by the contract.[3] See Chard Realty Inc. v. City of Shakopee, 392 N.W.2d 716, 720 (Minn. Ct. App. 1986); Anderson v. First Northtown Nat'l Bank,

---

[3]The guarantors do not argue there is a duty owed to them under the marketing agreement.

361 N.W.2d 116, 118 (Minn. Ct. App. 1985). Amerishare Agency, Amerishare Communications, Stelk, and Craft are not signatories to the marketing agreement, and the marketing agreement does not show an intent to benefit the guarantors. See Chard, 392 N.W.2d at 720-21 (alleged third-party beneficiary not mentioned in contract). The fact that the loan documents did not exist when Amerishare Investors and ITT Hartford entered into the marketing agreement demonstrates against intended beneficiary status. See, e.g., Gold'N Plump Poultry Inc. v.. Simmons Eng. Co., 805 F.2d 1312, 1318-19 (8th Cir. 1986).

In Lee v. Chica, 983 F.2d 883 (8th Cir.), cert. denied, 510 U.S. 906 (1993), we held that an arbitration agreement between a customer and a brokerage firm can bind the agent who traded in the account even if the agent did not sign the customer agreement. Id. at 886-87. We reasoned that the plain language of the arbitration clause covered the customer's claims against the agent who was managing her account as an employee of the brokerage firm. Id. at 887. In Lee, however, the only agreement at issue was the customer agreement and the customer sued for claims under that agreement. Cf. Schoenborn, 495 N.W.2d at 463 (refusing to extend policy's arbitration clause). Here, ITT Hartford sued to collect money under the loan agreements. The loan transaction was a separate agreement, distinct from the marketing agreement. The loan agreements involved different entities and obligations. Cf. Anda Constr. Co. v. First Fed'l Savings & Loan, 349 N.W.2d 275, 278 (Minn. Ct. App. 1984). The fact that Amerishare may have claims against ITT Hartford under another agreement does not transform the two agreements into one unified transaction. ITT Hartford's claim to recover under the loan agreement has no bearing on Amerishare's ability to arbitrate its claims, as readily conceded by ITT Hartford.[4]

---

[4]At oral argument, Amerishare stated that it had requested arbitration of its claims against ITT by filing its motion to compel arbitration in this case. The marketing agreement, however, sets forth a detailed procedure for the initiation of arbitration and selection of arbitrators. At the time of oral argument, Amerishare admitted that it had not yet initiated arbitration proceedings under the marketing agreement.

Amerishare also argues that the arbitration provision in the marketing agreement extends to this dispute because the guaranty and security agreements expressly incorporated Amerishare's obligation to arbitrate. The guaranties provide:

> Guarantor absolutely, irrevocably and unconditionally guarantees to Secured Party the payment and performance of all liabilities and obligations of Amerishare Investors, Inc. ("Debtor") promptly when due, by acceleration or otherwise, under that certain Loan Agreement of even date by and between Debtor and Secured Party. . . .

This language, however, is a guarantee of Amerishare's obligation "under that certain loan agreement." It does not obligate the guarantors under the marketing agreement. This presents a far different scenario than that in Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966 (2d Cir. 1975), cert. denied, 426 U.S. 936 (1976), where the court found the guarantors bound by the arbitration clause in the original contract. Id. at 973-74. Although the guaranty in that case did not contain an arbitration provision, the guarantors in that case not only agreed to perform the balance of the original contract, but also agreed to assume the rights and obligations under the original contract. Id.

Although we recognize that we must resolve any ambiguities in the marketing agreement in favor of arbitration, we can say with positive assurance that the arbitration clause does not cover the instant dispute. Amerishare and ITT Hartford executed the marketing agreement eight months before the execution of the promissory note and guaranties. Although the promissory note refers to the marketing agreement, it does not provide that the note or guaranties are subject to the provisions of the marketing agreement. Cf. Knutson, 433 N.W. 2d at 151. Indeed, the note states that the note and the writings constitute the sole agreement of Amerishare and ITT Life and supersede all prior agreements. The loan agreements do not discuss arbitration and, in fact, expressly provide that Amerishare consents to the personal jurisdiction of the Minnesota courts with respect to the loan documents. It is evident to us that the agreements are not so connected as to impose the arbitration provision to the loan

documents.

The district court did not err in refusing to compel arbitration.

**II.**

Even if the court disagrees that arbitration is required, Amerishare contends that reversal is still warranted because of genuine issues of material fact.  Amerishare contends that there exists a genuine issue of material fact as to whether the contract performance is excused by the prevention doctrine.  Amerishare contends that "contract performance is excused when it is hindered or rendered impossible by the other party." LaSociete Generale Immobiliere v. Minneapolis Community Dev. Agency, 44 F.3d 629, 638 (8th Cir. 1994) (quoting Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 45 (Minn. 1984)), cert denied, 116 S. Ct. 58 (1995).

Amerishare contends that it raised numerous factual issues supporting complete defenses to ITT's claims; most importantly, a defense based on ITT's breach of its duty of good faith.  Amerishare argues the affidavits it filed raised a genuine issue of material fact both as to liability and damages.  Amerishare contends that there exists a genuine issue of fact as to whether ITT breached the marketing agreement creating liability under the loan agreement and guaranties.  Amerishare further contends that there are genuine issues of fact as to damages under the loan agreement and guaranties.  In addition to the affidavits detailing ITT Hartford's actions which constitute liability under the marketing agreement, Stelk filed an affidavit stating that the promissory note upon which ITT is suing will be paid in full by September 1996, due to residual income that is being generated monthly from Amerishare accounts now controlled by ITT Hartford. The controller for ITT Hartford filed an affidavit stating that it had reduced Amerishare's debt to ITT Hartford by $276,300, the amount of commissions due Amerishare.  He further stated that ITT Hartford had not received the payments that Amerishare claimed would pay off the remaining note balance, and that ITT Hartford did not expect any further commissions generated by Amerishare.

The district court stated that in light of the fact that the ITT Hartford had stipulated to a dismissal of the counterclaims and agreed that counterclaims were subject to arbitration, there was no basis for withholding summary judgment.

Amerishare raises the identical arguments before this court, characterizing its counterclaims and affirmative defenses as absolute defenses to liability, creating a genuine issue of material fact. The only argument that Amerishare identifies as to why the arbitration of the counterclaims cannot proceed independently is that if the arbitration panel decides that ITT wrongfully terminated the marketing agreement, then ITT had no right to "call" its loan under the loan agreement. If this happened, the district court rulings would be irreconcilable. Amerishare cites two cases which hold that a factual finding by a panel of arbitrators can collaterally estop a related issue in a court proceeding.

We are unconvinced by Amerishare's argument. An arbitrator's subsequent ruling in favor of Amerishare on its claims under the marketing agreement would not be irreconcilable to the judgment on the promissory note. The district court only decided liability under the loan documents. The cases cited by Amerishare establish only that a factual finding of an arbitrator can be collateral estoppel in a later court proceeding. See, e.g., Vacca v. Viacom Broadcasting, 875 F.2d 1337, 1339 (8th Cir. 1989). This principle of collateral estoppel does not apply here because there has not been an arbitration. See Dean Witter Reynolds, Inc., 470 U.S. at 223 ("The collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed"). Should Amerishare institute arbitration and the arbitration panel find in favor of Amerishare on its counterclaims, the arbitration panel can simply award damages accordingly. There are no genuine issues of disputed fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

We affirm the district court's judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.