*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0339**

All Around Property Preservation, LLC,
Respondent,

vs.

Ronald Clark, et al.,
Appellants,

Bank of America, N.A.,
Defendant,

Scott Halderson Construction, LLC,
Respondent.

**Filed October 27, 2025
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Wright County District Court
File No. 86-CV-21-6214

Michael S. Rowley, Goetz & Eckland P.A., Minneapolis, Minnesota; and

Courtney J. Ernston, North Star Law Group PLLC, St. Paul, Minnesota (for respondent All Around Property Preservation, LLC)

Patrick J. Neaton, Michael L. Puklich, Neaton & Puklich, P.L.L.P., Chanhassen, Minnesota (for appellants)

Bradley D. Fisher, Brian D. Steffes, Liam P. Nuhring, Fisher Bren & Sheridan, LLP, Minneapolis, Minnesota (for respondent Scott Halderson Construction, LLC)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**LARKIN**, Judge

In this appeal following a court trial on claims stemming from a construction dispute, appellant property owners challenge the district court's judgment and award of attorney fees. We reverse and remand, solely on the issue of damages.

## FACTS

Appellants Ronald Clark and Karen Clark own property that includes a horse stable and horse-riding arena. Ms. Clark teaches horse-riding lessons in the arena. In August of 2020, the property was damaged by hail.

On May 17, 2021, the Clarks contracted with respondent All Around Property Preservation, LLC (AAPP) to repair the hail damage. The contract covered repairs to the roof of the horse stable and riding arena and included the removal and replacement of the vapor barrier. AAPP subcontracted with respondent Scott Halderson Construction, LLC (SHC) to perform the repairs.

The work on the project began in August 2021. Except for several punch-list items, AAPP and SHC substantially completed the project in early October 2021. Around this time, the Clarks were dissatisfied with the appearance of the vapor barrier and had concerns about pieces of tape hanging from the barrier in the riding arena. Ms. Clark testified that she found a piece of tape that had fallen from the vapor barrier to the floor of the riding arena, and she was concerned that a horse might panic as a result of falling tape and hurt someone. Ms. Clark put markers on the ground in the riding arena so riders would avoid areas where she had observed hanging or peeling tape.

2

After the Clarks expressed their dissatisfaction, SHC and AAPP attempted to address the Clarks' concerns by applying patch tape to the vapor barrier. Although SHC was able to apply patch tape to some areas, the Clarks prevented SHC and AAPP from accessing all parts of the property. Between the end of October 2021, and early December 2021, AAPP and SHC made several attempts to contact the Clarks to schedule a time to complete the vapor barrier. The Clarks did not cooperate with those requests.

The Clarks sought an opinion from the vapor-barrier distributor regarding the quality of the vapor-barrier installation. Two representatives from the distributor informed the Clarks that the vapor barrier was installed correctly and that patch tape was the proper solution to their concerns. In July 2022, the Clarks received a second opinion on the matter from RCL Engineering Group, which was consistent with the distributor's opinion.

AAPP recorded a mechanic's lien on the Clarks' property. Later, AAPP sued the Clarks for breach of contract, promissory estoppel, unjust enrichment, and mechanic's lien foreclosure. The Clarks counterclaimed for breach of contract, and AAPP sued SHC as a third-party defendant.

The district court held a three-day court trial on the claims. The district court made detailed posttrial findings of fact and conclusions of law, entered judgment for AAPP on its claims for breach of contract and mechanic's lien foreclosure, and dismissed all other claims and counterclaims. The district court also awarded AAPP and SHC reasonable attorney fees, costs, and disbursements.

The Clarks moved for a new trial or amended findings. The district court denied the Clarks' motion; however, the district court acknowledged that it had erred in awarding SHC attorney fees and ruled that SHC was not entitled to attorney fees.

The Clarks appeal.

## DECISION

Following a court trial, we review a district court's findings of fact for clear error. *Zephier v. Agate*, 957 N.W.2d 866, 875 (Minn. 2021). In determining whether a finding of fact is clearly erroneous, we examine the record to see if there is evidence that reasonably supports the district court's finding, and we view the evidence in the light most favorable to the finding. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021). "We will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 221 (quotation omitted). However, "[w]e review the district court's application of the law de novo." *Zephier*, 957 N.W.2d at 875; *Harlow v. State, Dep't of Hum. Servs.*, 883 N.W.2d 561, 568 (Minn. 2016).

## I.

The Clarks contend that the district court erred in its determination that they failed to make reasonable efforts to mitigate damages.

"It is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages." *Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. App. 1990). Reasonableness is a question of fact. *See Krause v. Union Match Co.*, 170 N.W. 848, 849 (Minn. 1919); *Larson v. Urb. Unit Corp.*, 360

4

N.W.2d 451, 452 (Minn. App. 1985). The nonbreaching party has an affirmative duty to mitigate damages. *Lanesboro Produce & Hatchery Co. v. Forthun*, 16 N.W.2d 326, 328 (Minn. 1944). If the nonbreaching party fails to mitigate its damages, it is not entitled to any damages that could have been avoided through reasonable mitigation. *Id.*

As to the vapor-barrier installation, the district court heard testimony that "hanging tape can be removed, surfaces washed, and patch tape can be applied." The district court noted that one expert witness testified that the entire roof and insulation system would need to be removed and replaced. The district court implicitly rejected that testimony, and we defer to the fact-finder's credibility determinations. *In re Civ. Commitment of Ince*, 847 N.W.2d 13, 24 (Minn. 2014). Moreover, to the extent that the Clarks suggest that the patch-tape solution was not a proper method to address their concerns, this court is not permitted "to reweigh the evidence when reviewing for clear error." *Kenney*, 963 N.W.2d at 221.

The record reasonably supports the district court's finding that the Clarks' failure to mitigate damages was unreasonable. The district court found—and the record supports—that, "[a]fter the Clarks first expressed dissatisfaction with the hanging tape, [SHC] returned to the property" to apply more tape. However, the Clarks denied SHC access to parts of the property, and SHC therefore applied patch tape in only a few spots. Subsequently, on October 22, 2021, AAPP and SHC met with the Clarks at the Clarks' property to address their concerns but were denied access, including in part by a pile of manure that blocked an entrance. "Throughout November 2021, AAPP made numerous attempts to contact the Clarks" to schedule completion of the punch-list items and an inspection. The Clarks did not cooperate with those requests.

5

In addition, the Clarks were informed by the vapor-barrier distributor that cleaning the substrate and re-adhering patch tape would be the appropriate remedy. The Clarks received a second opinion from RCL Engineering Group that likewise recommended cleaning and re-adhering the patch tape. Yet Ms. Clark testified that she did not allow SHC or AAPP back on the property to fix the tape issues because she did not want additional patch tape applied in the same manner that it was originally applied.

In sum, the factual findings underpinning the district court's determination that the Clarks unreasonably failed to mitigate damages are reasonably supported by the record and do not leave us with a definite and firm conviction that a mistake has been made.

**II.**

The Clarks contend that the district court erred in its determination that their "refusal to allow [AAPP] and SHC to cure the vapor barrier issues with patch-tape was unreasonable and excused [AAPP's] and SHC's performance."

"Generally, contract performance is excused when it is hindered or rendered impossible by the other party." *Zobel & Dahl Const. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). In such circumstances, the party who hindered performance breaches the contract. *See id.* ("In a contract for construction of a home, an owner who unreasonably fails to allow the contractor to complete the project excuses the contractor's performance and breaches the contract."). The question of whether a party unreasonably hindered performance of a contract is a question of fact. *Id.* at 46.

The Clarks note that AAPP's and SHC's attempts to return with patch tape was the only cure offered to address the hanging tape, and they argue that there was no "evidence

6

that more patch-taping—even with additional cleaning—would work the second time." The Clarks ask: "If the vapor barrier product is simple to install[,] patch-tape [is] a standard fix to repair seam gaps[,] SHC's patch-taping and re-taping was done in accordance with industry standards[,] and SHC had never had an issue like this before[,] then why do these problems exist?" The Clarks complain that the district court "failed to find how and why [the Clarks'] refusal to allow an unsuccessful fix to continue was unreasonable."

As to the Clarks' assertion that patch tape was not the proper solution to address the Clark's concerns regarding the vapor barrier, the Clarks essentially ask us to reweigh the evidence, which we are not permitted to do. *Kenney*, 963 N.W.2d at 221. The district court heard testimony from numerous witnesses regarding the use of patch tape on the newly installed vapor barrier and made related findings based on the evidence. As described above, the record reasonably supports the district court's finding that the Clarks' refusal to permit AAPP and SHC to return and apply patch tape was unreasonable. Because that finding was not in error, the district court correctly determined that AAPP's performance was excused. *Zobel*, 356 N.W.2d at 45.

### III.

The Clarks contend that the district court erred in its determination that the riding arena is fit for its intended use.

As to this issue, the Clarks note that Ms. Clark's uncontradicted testimony established—and the district court found—that the "hanging and peeling tape has impacted Ms. Clark's riding lessons[,]" that the hanging tape "can cause the horses to become fearful[,]" and that the Clarks have had to "place markers on the ground beneath where the

7

tape had come loose so riders knew . . . to go around those areas." The Clarks complain that the district court failed to explain "how a riding arena that cannot be fully utilized due to a dangerous condition can be considered fit for its intended purpose" and argue that the "finding that the riding arena is fit for its intended purpose is erroneous and unsupported by the record."

The district court found—and the record supports—that Ms. Clark observed only two pieces of hanging tape and only eleven pieces that had begun to peel. Although Ms. Clark was concerned that falling tape might scare a horse and lead to someone's death, the Clarks did not permit AAPP or SHC to apply all of the necessary patch tape. And the Clarks did not otherwise attempt to address the hanging tape. Nevertheless, Ms. Clark continued to give riding lessons in the arena during construction and at the time of trial.

On this record, the district court's factual finding that the riding arena is fit for its intended use is reasonably supported by the record and does not leave us with a definite and firm conviction that a mistake has been made.

## IV.

The Clarks contend that the district court erred in its damages calculation.

"In an action under the mechanics lien statute, when the project in dispute has not been completed," the statute "contemplates that the lien shall be measured according to ordinary common law principles." *E.C.I. Corp. v. G.G.C. Co.*, 237 N.W.2d 627, 628 (1976) (discussing Minn. Stat. § 514.03 (1971)). The supreme court explained that section 514.03:

8

specifically addresses the situation when the contracted project has been completed. In such a case if the lienor has made his contribution under a contract for an agreed price, then the measure of his lien is the sum so agreed upon. In the situation when the project is incomplete, however, the legislature intended that the lien be measured according to ordinary common law principles. Thus when the project is incomplete the measure of the lien may vary depending on whether the contract was for a specific price, whether the work is substantially complete, whether the plaintiff or the defendant is in breach, and whether the contract is treated as at an end.

*Id.* at 630 (citation omitted).

In *E.C.I.*, a property owner contracted with a landscaper for landscaping services. *Id.* at 628-29. "Problems arose, each party became dissatisfied, and . . . before the project was substantially completed, all work and payments ceased." *Id.* at 629. The landscaper sued the property owner under the mechanic's lien statute, and the district court awarded judgment based on the reasonable value of what the landscaper had provided. *Id.* The supreme court affirmed the reduced damage award. *Id.* at 630.

Subsequent caselaw is in accord. For example, in a suit to foreclose a cabinet maker's mechanic's lien against a property owner, the supreme court affirmed the district court's finding that the cabinet maker substantially performed the contract and the district court's use of diminution of value as the measure of damages. *Asp v. O'Brien*, 277 N.W.2d 382, 383-85 (Minn. 1979). In a suit to foreclose an asphalt paver's mechanic's lien against a property owner, this court affirmed the district court's determination that the asphalt paver had failed to substantially perform under the contract and therefore was not entitled to any damages. *Paving Plus, Inc. v. Pro. Invs., Inc.*, 382 N.W.2d 912, 915-16 (Minn. App. 1986). In so holding, we cited *Snider v. Peters Home Building Co.*, which states the

9

principle that "[i]t is the law of this state that the builder who has in good faith substantially performed, though there are minor defects, if they are of a character which may be so remedied that the owner will have that for which he contracted, may recover on the contract the agreed price less such sum as will cure the defects." 167 N.W. 108, 109 (Minn. 1918).

In sum, in an action to foreclose a mechanic's lien, the lienor's ultimate recovery on the lien may be less than the contract amount, as a result of the common law governing damages.[1]

"In construction contracts, if the work has commenced and the buyer breaches, the contractor is entitled to the unpaid contract price less the amount it would have cost him to complete his performance." *Zobel*, 356 N.W.2d at 46. The same is true when a contractor has substantially performed the contract—the contractor "is entitled to recover the contract price, less the sum necessary to cure the defects." *Sward v. Nash*, 40 N.W.2d 828, 830 (Minn. 1950). In this case, the district court found that AAPP substantially performed the contract.

The Clarks argue that the district court failed "to determine [the] necessary corrective work, its cost[,] and [to reduce] any award accordingly." AAPP and SHC

---

[1] We acknowledge that this court's decision in *All, Inc. v. Hagen* could suggest that the application of the common law when determining the amount of recovery on a mechanic's lien was abrogated as a result of an amendment to section 514.03, which specifies the method used to determine the amount of a mechanic's lien. 970 N.W.2d 681, 687 (2021) (comparing the language in Minn. Stat. § 514.03 (1971) with the language in Minn. Stat. § 514.03 (2020)). We understand *Hagen* to be limited to the facts of that case and to stand for the proposition that a determination of the *initial* amount of a mechanic's lien is made according to the method set forth in section 514.03. We do not read *Hagen* as precluding reliance on the common law governing contract damages when determining the amount a lienor may recover as damages on the lien.

10

respond that, because the Clarks unreasonably hindered performance and thus excused performance under the contract, the Clarks were not entitled to any reduction. That assertion is incorrect. The general proposition that a contractor who substantially performs is entitled to the contract price less its cost to remedy defects is true, even if the breaching party unreasonably hindered performance. *See Zobel*, 356 N.W.2d at 46 (affirming finding that property owner unreasonably hindered contractor's performance and breached contract stating, "the contractor is entitled to the unpaid contract price less the amount it would have cost him to complete his performance").

Although the district court did not make an explicit finding regarding AAPP's cost to complete the punch-list items, the court made a number of factual findings regarding the potential cost. The district court found—and the record supports—that "some minor defects were detected." These defects included "gaps, separations, . . . wrinkling of seams, some loose tape, a seam with missing adhesive, and a few missed screws." The court also acknowledged testimony that "slight defects or outstanding minor issues are typically remedied as 'punch list' items, which include[] customer concerns." And the record included testimony that punch-list items are completed at no cost to the to the customer. The district court noted that one witness testified that it would take two days to complete the punch-list items, at a cost of $6,129.50. The district court also noted that another witness testified that the entire roof needed to be removed.

In concluding that AAPP was entitled to the full amount of the contract price, the district court correctly set forth the law, stating that "the contractor is entitled to the unpaid contract price less the amount it would have cost him to complete his performance." The

11

district court then found that the unpaid balance of the contract price was $55,500 and awarded AAPP damages of $55,500 plus interest, despite the uncompleted punch-list items.

To the extent that the district court reasoned that there would have been no cost to the Clarks to fix the vapor barrier because the repairs constituted a punch-list item included in the contract price, the district court erred. The relevant fact is the cost to AAPP, and not the cost to the Clarks. *See Zobel*, 356 N.W.2d at 46. Thus, the district court erred by failing to determine the amount it would have cost AAPP to complete its performance under the contract and by failing to deduct that amount from the damage award. We therefore reverse the award of damages and remand for a determination of damages consistent with this opinion.

## V.

Finally, the Clarks contend that "the Court erred by awarding [AAPP] its full attorneys' fees request."

In a mechanic's lien foreclosure action, a prevailing lienor is entitled to "costs and disbursements to be fixed by the court." Minn. Stat. § 514.14 (2024). "As part of the lienor's costs and disbursements, the court may award a reasonable attorney fee." *Stiglich Const., Inc. v. Larson*, 621 N.W.2d 801, 803 (Minn. App. 2001), *rev. denied* (Minn. March 27, 2001).

The amount of an attorney-fee award is within the discretion of the district court. *Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn. 1982).

12

> [T]he factors to be considered are: time and effort required, novelty or difficulty of the issues, skill and standing of the attorney, value of the interest involved, results secured at trial, loss of opportunity for other employment, taxed party's ability to pay, customary charges for similar services, and certainty of payment.

*Id.* "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

The Clarks argue that the district court "cited, but failed to analyze, all the relevant factors to consider in awarding [attorney] fees," and they request that we remand for consideration of "all factors in any attorney fee award."

The district court awarded AAPP attorney fees in the amount of $109,204.88, explaining the award as follows:

> Here, the procedural posture of this case caused significant delays and additional costs. This case filed in December 2021, took multiple years to resolve and the deadlines were repeatedly pushed out. Many experts were obtained to determine the issues in this particular case. The skill and standing of the attorney are high and the hourly rate is custom. AAPP was awarded the full amount sought and the Defendants were unsuccessful on any of their claims. Defendants state they are unable to pay such an amount. While the amount of attorney's fees in this case is significantly greater than the lien itself, AAPP spent more than 2.5 years actively litigating.

On this record, we are not persuaded that the district court erred in its determination of AAPP's attorney fees. However, because the district court reasoned, in part, that AAPP was awarded "the full amount sought" and because it is necessary to remand for

recalculation of AAPP's damages, the district court has discretion to modify the attorney-fee award based on its determination of damages on remand.

In conclusion, because the district court failed to determine the amount that it would have cost AAPP to complete the vapor-barrier and to deduct that amount from its award of damages to AAPP, we reverse the award of damages and remand for the district court to make that determination and to adjust the damage award in accord. We otherwise affirm the district court.

**Affirmed in part, reversed in part and remanded.**